RECEIVED IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MAR 1 1 2026

KELLY L. STEPHENS, Clerk

## No. 26-3108

---

———

## ANDREW LEE EUGENE KNOX,

Plaintiff-Appellant,

*versus*

## HARDIN COUNTY MUNICIPAL COURT, et al.,

Defendants-Appellees.

———

---

———

On Appeal from the United States District Court for the District of Ohio

Hon. District Judge James R. Knepp II

No. 3:25-cv-01174-JRK

## APPELLANT'S INFORMAL OPENING BRIEF

Andrew Lee Eugene Knox
P.O. Box 344
Russells Point, OH 43348
Knox.andrew19@gmail.com
Pro Se Appellant

## I.   CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Appellant Andrew Lee Eugene Knox states that he is an individual and not a corporation. Therefore, no corporate disclosure statement is required.

Date: March 11, 2026

Andrew Lee Eugene Knox
P.O. Box 344
Russells Point, OH 43348
Knox.andrew19@gmail.com
Pro Se Appellant

i

## II.   <u>TABLE OF CONTENTS</u>

I. CORPORATE DISCLOSURE STATEMENT.............................. i

II. TABLE OF CONTENTS.............................................. 1

III. TABLE OF AUTHORITIES......................................... 5

V. STATEMENT OF JURISDICTION.................................. 8

VI. STATEMENT OF THE ISSUES PRESENTED FOR
REVIEW........................................................................ 9

VII. STATEMENT OF THE CASE...................................... 12

A. Nature of the Case and Procedural History.................... 12

B. Statement of Facts................................................. 15

VIII. SUMMARY OF THE ARGUMENT............................. 24

IX. ARGUMENT......................................................... 30

A. STANDARD OF REVIEW.......................................... 30

B. THE DISTRICT COURT RESOLVED QUESTIONS OF FACT
THAT CANNOT BE DECIDED AT THE MOTION TO DISMISS
STAGE....................................................................... 33

1. Center v. City of West Carrollton Establishes That
Effectiveness
Is a Question of Fact.................................................. 33

2. The District Court Improperly Weighed Facts Instead of
Accepting Knox's Allegations........................................ 34

3. Knox's Allegations Are Stronger Than Center—Which
Survived Summary Judgment......................................... 37

C. THE DISTRICT COURT FAILED TO APPLY THE "PRIMARY CONSIDERATION" MANDATE.................................... 38

   1. Federal Regulations Create a Rebuttable Presumption in Favor of the Individual's Choice................................. 38

   2. The "Minor Matter" Fallacy: Tennessee v. Lane Prohibits Complexity-Based Discrimination.................................... 40

   3. The Burden Was on Defendants to Prove "Equally Effective".......................................................................... 42

   4. The District Court Ignored Primary Consideration Entirely.......................................................................... 44

   5. Updike Confirms That Providing One Accommodation Doesn't Excuse Denying Others.................................... 45

D. THE DISTRICT COURT ERRED BY FINDING NO CONCRETE INJURY.................................................................. 47

   1. The "Completed Tort" Theory: The Violation Was Complete on May 27............................................................ 47

   2. Dignitary Harm Under Tennessee v. Lane................................. 51

   3. Statutory Standing: The Denial Itself Is the Injury.................. 55

   4. The District Court Ignored Knox's Allegations of Harm........... 56

E. THE COURT'S "CATCH-22" ADMINISTRATIVE BARRIER VIOLATES THE ADA.................................................. 57

   1. The Text of 28 C.F.R. § 35.130(b)(3) Prohibits Discriminatory Procedures............................................. 57

2. The Discriminatory Hurdles: Non-Deaf vs. Deaf Disparity.......59

3. The Impossible Barrier: You Need an Interpreter to Request an Interpreter................................................................. 62

4. This Is a Systemic, Not Individual, Violation........................... 64

F. KNOX'S ALLEGATIONS SHOW DELIBERATE INDIFFERENCE........................................................................64

1. Notice and Refusal: The Timeline of Deliberate Indifference..............................................................................64

2. The Ohio Supreme Court Warning: Knowledge of "Strong Likelihood"................................................................. 71

3. Judge Grimslid's Recusal: Consciousness of Wrongdoing..........72

4. Knox's Evidence Is Stronger Than Cases That Survived Dismissal.................................................................. 73

G. THE DISTRICT COURT MISAPPLIED TUCKER AND SHAFFER.......................................................................... 74

1. Tucker Is Distinguishable........................................................ 74

2. Shaffer Is Distinguishable........................................................ 74

3. Updike Shows Why This Case Shouldn't Have Been Dismissed............................................................................ 75

4. The Court Ignored Binding Precedent...................................... 79

5. Judicial Immunity Does Not Shield Administrative ADA Violations.................................................................... 80

X. CONCLUSION.................................................................83

XI. CERTIFICATE OF COMPLIANCE....................................................85

XII. CERTIFICATE OF SERVICE........................................................ 86

XIII. DESIGNATION OF RELEVANT DISTRICT COURT

DOCUMENTS....................................................................................... 87

## III.  TABLE OF AUTHORITIES

<u>*Cases*</u>                                                                                    <u>*Page(s)*</u>

*Bahl v. County of Ramsey*,
695 F.3d 778 (8th Cir. 2012)..............................................27, 35, 38, 48-50


*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 32, 37


*Castro v. United States*,
540 U.S. 375 (2003).............................................................................. 24


*Center v. City of West Carrollton*,
227 F. Supp. 2d 863 (S.D. Ohio 2002).... 9, 11, 24-25, 29-30, 33, 35, 37-38,
73, 78-80


*Duvall v. County of Kitsap*,
260 F.3d 1124 (9th Cir. 2001)...........................11, 27, 29, 39, 64-66, 70-72


*Forrester v. White*,
484 U.S. 219 (1988)....................................................................... 80-83,


*Hill v. Bradley County Board of Education*,
2008 WL 4129951 (6th Cir. 2008)............................... 10, 23-24, 28, 51-52

*Iqbal v. Ashcroft,*

556 U.S. 662 (2009)............................................................................... 32

*Scottsdale Ins. Co. v. Flowers,*

513 F.3d 546 (6th Cir. 2008)............................................................... 25

*Shaffer v. City of Columbus,*

444 F. Supp. 3d 872 (S.D. Ohio 2020)............................. 29-30, 74, 77, 79

*S.S. v. Eastern Kentucky University,*

2008 WL 2704820 (6th Cir. 2008)............................. 11, 19, 29, 59, 62, 64

*Tennessee v. Lane,*

541 U.S. 509 (2004).......................................................... 40, 42, 48, 51, 53

*Tucker v. Tennessee,*

539 F.3d 526 (6th Cir. 2008)...................... 29-30, 36-37, 42-43, 74, 77, 79

*Updike v. Multnomah County,*

878 F.3d 847 (9th Cir. 2017)............ 24-27, 31, 38-39, 45, 47, 67-68, 75-79

### Statutes

28 U.S.C. § 1291................................................................................... 8

28 U.S.C. § 1331................................................................................... 8

6

29 U.S.C. § 794 (Section 504 of the Rehabilitation Act)............................ 8

42 U.S.C. § 12131 et seq. (Americans with Disabilities Act, Title II)...... 8

42 U.S.C. § 1983.......................................................................................... 8

Ohio Revised Code § 2311.14...................................................................... 20

*Rules & Regulations*

Fed. R. App. P. 4(a)(1)(A)............................................................................ 15

Fed. R. App. P. 39....................................................................................... 84

Fed. R. Civ. P. 12(b)(6)............................................................... 14, 24, 32

28 C.F.R. § 35.104....................................................................................... 21

28 C.F.R. § 35.106....................................................................................... 23

28 C.F.R. § 35.130(b)(3)....................................... 11, 29, 57, 59, 61-62,

28 C.F.R. § 35.160(a)................................................................................... 58

28 C.F.R. § 35.160(b)(2)................................................9, 21, 27, 38-39, 44

28 C.F.R. § 35.164.................................................................................39, 81

## V.   STATEMENT OF JURISDICTION

### District Court Jurisdiction

The United States District Court for the Northern District of Ohio had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Appellant's claims arise under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983.

### Appellate Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which grants courts of appeals jurisdiction over appeals from "final decisions" of district courts. The District Court entered its Memorandum Opinion and Order dismissing all claims on January 12, 2026. [RE 33, PageID #319]. The District Court entered final judgment the same day. [RE 34, PageID #329].

### Timeliness of Appeal

Appellant filed his Notice of Appeal on February 10, 2026, within 30 days of the entry of final judgment as required by Federal Rule of

8

Appellate Procedure 4(a)(1)(A). [RE 35, PageID #330]. The appeal is timely.

## VI.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**1.** Whether the District Court erred by resolving questions of fact regarding the effectiveness of auxiliary aids at the motion to dismiss stage, when *Center v. City of West Carrollton*, 227 F. Supp. 2d 863 (S.D. Ohio 2002), from the same district held that "the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."

*Answer Below:* The District Court resolved factual questions at the motion to dismiss stage and dismissed the case.

*Answer It Should Be:* The District Court erred. Effectiveness is a question of fact that cannot be decided at the pleading stage. *Center* survived summary judgment with weaker facts than Knox alleged.

**2.** Whether the District Court erred by failing to apply 28 C.F.R. § 35.160(b)(2), which requires public entities to give "primary consideration" to the auxiliary aid requested by the individual with a disability.

9

*Answer Below:* The District Court held that providing any "effective communication" was sufficient, regardless of Knox's specific request.

*Answer It Should Be:* The District Court erred. Federal regulations mandate primary consideration to the individual's choice. Knox specifically requested an ASL interpreter. The Court ignored his request. That violates the regulation.

**3.** Whether the District Court erred by finding that Appellant suffered no concrete injury when he alleged emotional distress, humiliation, and inability to effectively communicate, and when *Hill v. Bradley County Board of Education,* 2008 WL 4129951 (6th Cir. 2008), holds that later accommodation does not moot compensatory damages claims.

*Answer Below:* The District Court found no concrete injury because Knox eventually received an interpreter for the June 2 hearing.

*Answer It Should Be:* The District Court erred. The May 27 violation was complete when it occurred. June 2 accommodation is irrelevant. *Hill* establishes this principle. Knox's allegations of emotional distress state valid claims.

10

**4.** Whether the District Court erred by failing to recognize that the Court's policy requiring in-person appearance to request an interpreter constitutes a "method of administration" that defeats ADA objectives in violation of 28 C.F.R. § 35.130(b)(3) and *S.S. v. Eastern Kentucky University*, 2008 WL 2704820 (6th Cir. 2008).

*Answer Below:* The District Court did not address this argument.

*Answer It Should Be:* The District Court erred. *S.S.* prohibits administrative procedures that force disabled individuals through extra hoops. Requiring a Deaf person to appear in person without communication access just to request communication access is a textbook "Catch-22" violation.

**5.** Whether Knox's allegations of deliberate indifference—including explicit warning from the Ohio Supreme Court and Defendants' refusal to change policy—state viable claims under *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), and *Center v. City of West Carrollton*, 227 F. Supp. 2d 863 (S.D. Ohio 2002).

*Answer Below:* The District Court did not address deliberate indifference.

11

*Answer It Should Be:* The District Court erred. Knox's allegations show stronger evidence of deliberate indifference than cases that survived dismissal. The Ohio Supreme Court explicitly warned the Court. The Court refused to change. That's deliberate indifference.

## VII.  STATEMENT OF THE CASE

### A. Nature of the Case and Procedural History

This is a civil rights case. Andrew Knox is Deaf. He communicates in American Sign Language. On May 27, 2025, he appeared at Hardin County Municipal Court for a traffic citation hearing. Despite advance requests, no interpreter was there. The Court used a phone app instead. Knox sued.

The District Court dismissed his case. It said Knox suffered no harm because he eventually got an interpreter for a rescheduled hearing on June 2, 2025. That reasoning is wrong. The law is clear: later accommodation doesn't cure earlier violations.

**Timeline:**

On May 17, 2025, Knox received a traffic citation. [RE 15, PageID #118, ¶14]. The hearing was set for May 27, 2025. *Id.*

12

On May 19, 2025, Knox called the court using a Video Relay Service with an ASL interpreter. [RE 15, PageID #118, ¶15]. He requested an interpreter for his hearing. Court staff refused. They said he had to appear in person to request an interpreter. [RE 9-12, PageID 91-93].

On May 21, 2025, Knox called again. [RE 15, PageID #118, ¶15]. Court staff again refused to process his request by phone. [RE 9-12, PageID #94-95; RE 9-2, PageID #57-58]. The clerk hung up on him. *Id.*

On May 22, 2025, Knox filed a complaint with the Ohio Supreme Court Language Services Section. [RE 15, PageID #119, ¶17]. A state official contacted the municipal court. The court refused to change its procedure. *Id.*

On May 27, 2025, Knox appeared for his hearing. [RE 15, PageID #120, ¶18]. No interpreter was present. A clerk told him to "read her lips." *Id.* Inside the courtroom, a court employee tried to help using a phone app. [RE 15, PageID #120, ¶19]. Judge Grimslid said the matter was "minor" so no interpreter was arranged. *Id.* The judge rescheduled the hearing to June 2, 2025. [RE 15, PageID #120, ¶20].

13

That same afternoon, Knox sent a formal complaint letter to the court. [RE 15, PageID #121, ¶21]. Judge Grimslid responded: "At this time, there is no response to your highlighted proposed settlement terms." *Id.* The next day, Judge Grimslid recused himself. [RE 15, PageID #121, ¶22].

On May 30, 2025, the Ohio Supreme Court sent a formal letter to the municipal court citing ADA violations. [RE 9-3, PageID #66; RE 9-4, PageID #68].

On June 2, 2025, the rescheduled hearing was held with an interpreter present. [RE 33, PageID #321]. Knox waived defense and paid a $45 fine. *Id.*

On June 5, 2025, Knox filed this federal lawsuit. [RE 1, PageID #1]. He filed a First Amended Complaint on June 26, 2025. [RE 15, PageID #114].

Defendants moved to dismiss under Rule 12(b)(6). [RE 24, 27]. Knox opposed both motions with detailed legal arguments. [RE 25, 29].

On January 12, 2026, the District Court granted the motions and dismissed Knox's case. [RE 33, PageID #319]. The court held that Knox failed to state a claim because he "was afforded the specific

14

accommodation he requested when all substantive proceedings in his case took place." [RE 33, PageID #326].

Knox timely filed his Notice of Appeal on February 10, 2026 pursuant to Fed. R. App. P. 4(a)(1)(A). [RE 35, PageID #330].

## B. Statement of Facts

Standard at Motion to Dismiss: At the motion to dismiss stage, the Court must accept all factual allegations as true and draw all inferences in favor of the plaintiff. The following facts are taken from Knox's First Amended Complaint and must be accepted as true for purposes of this appeal.

## Knox Is Deaf and Uses American Sign Language

Andrew Knox is Deaf. [RE 15, PageID #116, ¶4]. He is a U.S. citizen and resident of Russells Point, Ohio. *Id.* He primarily communicates using American Sign Language (ASL). *Id.* He experiences substantial limitations in hearing and verbal communication. *Id.* This makes effective communication access legally required under federal law. *Id.*

No defendant disputes Knox's disability status.

## The Traffic Citation and Scheduled Hearing

On May 17, 2025, an Ohio State Trooper issued Knox a traffic citation for a window tint violation. [RE 15, PageID #118, ¶14]. The citation was a "waiver appearance" charge that did not require a court appearance. *Id.* Knox could have paid the fine without appearing. *Id.*

Knox chose to appear in person. Why? He wanted clarification about the legal basis for the citation. *Id.* That choice matters. When a Deaf person chooses to access judicial proceedings, the court must provide meaningful access.

The hearing was scheduled for May 27, 2025, at 8:30 a.m. *Id.*

**First Advance Request: May 19, 2025**

Eight days before his hearing, Knox called Hardin County Municipal Court. [RE 15, PageID #118, ¶15]. He used a Video Relay Service at (419) 674-4362. *Id.* An ASL interpreter relayed the call. *Id.*

Knox requested a qualified ASL interpreter for his May 27 hearing. *Id.*

Court staff said no. Not "we'll arrange one." Not "we'll call you back." No. They said the court doesn't accept accommodation requests by phone. [RE 9-12, PageID 91-93].

Here's what the clerk actually said:

16

> "We're gonna have to wait until we get the ticket. Um, and what would happen in that situation is you would come to court, we would realize that we need to issue an interpreter, and then you would be scheduled for another court date. That's just how that works."

Read that again. The court's "procedure": Show up without an interpreter. Let us "realize" you need one. Get rescheduled.

That's not a procedure. That's a violation.

Knox explained he had experienced courts before where he simply called and they arranged an interpreter. *Id.* The clerk responded: "I don't even have any record of you in my system at this point until I get that ticket." *Id.*

**Second Advance Request: May 21, 2025**

Six days before his hearing, Knox called again. [RE 15, PageID #118, ¶15]. Same result.

Different clerk. Same violation.

Here's what this clerk said:

> "When you do get here, um, we will realize that you do need an interpreter and we will order one and set you for another court date. ... That is not how our court works. ... That day we will request the interpreter and we will schedule you for another court date."

17

Knox tried again. He said: "Please request an interpreter now and schedule it for that date." [RE 9-12, PageID #94]

The clerk said: "That is not how our court works." *Id.*

Knox explained: "No, that's wrong because I'm calling to inform you that I am requesting an ASL interpreter to be scheduled for May 27th." *Id.*

The clerk's response shows the problem perfectly:

> "Okay. That's not how that works. When you come into court that day, we will request the interpreter that day. That's how our court works. That's how our court runs. That's always how our court has been run." *Id.*

Knox told the clerk this violated the law. *Id.*

The clerk said: "No, it's not. I am the one that works for the court. You do not work for the court. I know how this works. You do not." [RE 9-12, PageID #95]

Then the clerk hung up on him. *Id.*

These are verbatim transcripts. These conversations happened. The municipal court doesn't deny they happened.

## The Catch-22: You Must Appear to Request the Accommodation You Need to Appear

Think about what the court required.

18

A Deaf person calls. He says: "I need an interpreter for my court appearance."

The court says: "You must appear in person to request an interpreter."

But he needs an interpreter to appear in person.

That's not policy. That's a Catch-22. That's exactly what *S.S.* prohibits: "criteria or methods of administration" that defeat ADA objectives.

**The Ohio Supreme Court Intervened**

On May 22, 2025, Knox filed a complaint with the Ohio Supreme Court Language Services Section. [RE 15, PageID #119, ¶17; RE 9-3, PageID #59].

Bruno Romero, the Section's representative, personally called the municipal court. *Id.* He tried to resolve the issue informally. *Id.*

The municipal court refused.

Romero stated: "I called the court to see if we could settle this over the phone. Regrettably, the court refused to change their process. Since we want them to change their practice, a letter is necessary to address the issue." [RE 15, PageID #119, ¶17; RE 9-3, PageID #61].

19

On May 30, 2025—three days after Knox's violated hearing—the Ohio Supreme Court sent a formal letter to Judge Grimslid. [RE 9-3, PageID #66; RE 9-4, PageID #68]. The letter cited the Americans with Disabilities Act. *Id.* It cited Ohio Revised Code § 2311.14. *Id.* It requested a written response within 30 days. *Id.*

The state's highest court formally notified the municipal court of legal violations.

That notice matters. It establishes knowledge. It establishes deliberate indifference.

## May 27: The Violation Occurs

On May 27, 2025, Knox appeared at the courthouse. [RE 15, PageID #120, ¶18].

At the clerk's window, he informed staff he was Deaf and needed communication access. *Id.*

A clerk displayed visible hostility. *Id.* She rolled her eyes. *Id.* She told him to "read her lips" even after he said he couldn't hear. *Id.*

Knox politely asked for information to be written down. *Id.* The clerk responded with "clear irritation," an "aggressive tone," and "open disdain." *Id.*

20

Eventually, the clerk handed Knox a handwritten note: "we do not have one here but one will be appointed during court" and "it will happen during court." [RE 15, PageID #120, ¶18; RE 9-5, PageID #70].

The note was false. No interpreter was "appointed during court."

Inside the courtroom, a court employee tried to help using a personal phone app. [RE 15, PageID #120, ¶19]. This employee was not a qualified interpreter within the meaning of 28 C.F.R. § 35.104. *Id.* She was multitasking—helping Knox while also assisting other individuals. *Id.*

Judge Grimslid communicated with Knox through a phone app. *Id.* The judge stated: the matter was "minor" so the court did not arrange an interpreter. *Id.*

Let that sink in. The judge decided—on his own—that a "minor" traffic matter didn't require a qualified interpreter. That's not his decision to make. Federal regulations require the court to give "primary consideration" to Knox's request. 28 C.F.R. § 35.160(b)(2).

Judge Grimslid did eventually reschedule the hearing to June 2, 2025. [RE 15, PageID #120, ¶20]. He assured Knox an interpreter would be present. *Id.*

21

But that doesn't undo May 27.

## Formal Complaint and Court's Dismissive Response

That afternoon—May 27, 2025—Knox submitted a formal written

complaint. [RE 15, PageID #121, ¶21]. Three pages. Detailed.

Professional. He documented every violation. He proposed constructive

solutions:

- Formal acknowledgment of the violation
- ADA training for court personnel
- Clear, accessible accommodation policy
- A monetary settlement for the harm
  [RE 9-8, PageID #73].

Judge Grimslid's response? One sentence: "At this time, there is

no response to your highlighted proposed settlement terms." [RE 15,

PageID #121, ¶21].

That's it. No acknowledgment. No apology. No commitment to

change. Nothing.

The next day, May 28, 2025, Judge Grimslid recused himself. [RE

15, PageID #122, ¶22]. No explanation. *Id.*

## June 2: The Rescheduled Hearing

22

On June 2, 2025, the rescheduled hearing was held with an interpreter present. [RE 33, PageID #322]. Knox waived defense and paid a $45 fine. *Id.* The traffic case concluded. *Id.*

The District Court focused on this. It said: Knox got what he asked for. No harm.

Wrong.

The violation occurred on May 27. The injury occurred on May 27. June 2 doesn't cure May 27.

*Hill* holds exactly this: later compliance does not moot compensatory damages claims. If Knox seeks damages for emotional distress from May 27, June 2 is irrelevant.

**Systemic Failures**

Knox alleged more than just May 27. He alleged systemic failures:

The court doesn't publish any ADA policy on its website. [RE 15, PageID #123, ¶23; RE 9-9, PageID #80]. No statement of rights. *Id.* No accommodation procedures. *Id.* Nothing.

That violates 28 C.F.R. § 35.106, which requires public entities to inform individuals of their rights.

23

The court's "standard procedure" requires in-person appearance to request accommodations. [RE 15, PageID #118, ¶16]. That's the Catch-22 policy documented in the VRS transcripts.

Even after Ohio Supreme Court intervention, the court refused to change. [RE 15, PageID #119, ¶17].

These aren't one-time mistakes. They're institutional failures.

## VIII. SUMMARY OF THE ARGUMENT

The District Court committed reversible error. It dismissed Knox's complaint at the motion to dismiss stage by resolving factual questions that cannot be decided at the pleading stage. The Court's decision violated basic principles of Rule 12(b)(6) review and ignored binding precedent.

Appellant is proceeding pro se and his brief must be liberally construed. See *Castro v. United States*, 540 U.S. 375, 381 (2003). While some authorities herein—such as *Updike v. Multnomah County*, 878 F.3d 847 (9th Cir. 2017), *Hill*, and *Center*—were not cited below, they are not "new arguments" but are essential to demonstrate how the District Court's decision directly conflicts with controlling and persuasive law. This Court should consider them to correct plain error

24

and prevent manifest injustice. See *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

**First: The District Court improperly resolved questions of fact.**

In *Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 870 (S.D. Ohio 2002), a case with nearly identical facts from the same district, the court held: "Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."

If effectiveness cannot be decided at *summary judgment*—where evidence is reviewed and weighed—it certainly cannot be decided at *motion to dismiss*—where allegations must be accepted as true.

Yet the District Court did exactly that. It determined as a matter of law that a phone app provided "effective communication" despite Knox's allegations to the contrary.

*Center* survived summary judgment with weaker facts than Knox alleged. Knox was dismissed at motion to dismiss with stronger facts. That disparity proves error.

*Updike* reinforces that effectiveness cannot be determined by the public entity's subjective belief that communication was adequate.

25

In *Updike*, county employees believed they communicated effectively with the plaintiff through written English. *Id.* at 854, 858. The employees testified that the plaintiff "communicated fine using pen and paper." *Id.* at 860. Based on these employee observations, the district court granted summary judgment to the County. *Id.* at 854.

The 9th Circuit reversed. The court held that "whether the County's accommodation was sufficient requires sifting through a number of facts" and cannot be resolved on summary judgment where the disabled individual disputes effectiveness. *Id.* at 860. The court emphasized: "[Plaintiff] disputes the County's assertion that he was able to communicate fine using pen and paper, and instead contends that communication between him and corrections staff during the course of his detention and supervision were ineffective." *Id.* at 861.

Critical quote: "Even if a jury ultimately determines that the County is correct—a matter that must be left to the jury where, as here, there are disputes of material fact—summary judgment was improper because the County never meaningfully assessed [plaintiff's] limitations and comprehension abilities." *Id.*

26

Here, the District Court made the same error *Updike* reversed. The District Court concluded Knox experienced no "confusion" based on its own assessment, rather than accepting Knox's allegations that the phone app was ineffective. That's exactly what *Updike* prohibits: substituting the court's (or entity's) judgment for the disabled person's experience.

**Second: The District Court ignored the "primary consideration" mandate.**

Federal regulations require public entities to give "primary consideration" to the auxiliary aid requested by the individual with a disability. 28 C.F.R. § 35.160(b)(2).

Knox specifically requested an ASL interpreter. On multiple occasions. With eight days' advance notice.

The Court provided a phone app instead. Without considering Knox's choice. Without explaining why his choice was rejected.

That violates the regulation. *Bahl v. County of Ramsey*, 695 F.3d 778, 785 (8th Cir. 2012), and *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), confirm this principle.

Knox's allegations state a per se violation.

27

**Third: The District Court erroneously found no concrete injury.**

Knox alleged emotional distress. [RE 15, PageID #121, ¶21; PageID #129, Prayer for Relief]. He alleged humiliation. [RE 15, PageID #120, ¶18]. He alleged inability to effectively communicate. [RE 15, PageID #120, ¶¶19-20].

The District Court dismissed these allegations because Knox eventually received an interpreter for the June 2 hearing. [RE 33, PageID #326].

That reasoning is wrong.

*Hill*, *3, establishes: "If a plaintiff seeks compensatory damages, the fact that the defendant later complied does not make the case moot."

The May 27 violation is complete. June 2 accommodation is irrelevant to May 27 liability. Knox's allegations of damages state valid claims.

**Fourth: The District Court failed to address the "Catch-22" policy.**

The court required Knox to appear in person to request an interpreter. But Knox needed an interpreter to appear in person.

28

This is precisely what *S.S.*, *3, prohibits: "Public entities are prohibited from utilizing 'criteria or methods of administration' that have the effect of defeating or substantially impairing the objectives of the program." 28 C.F.R. § 35.130(b)(3).

A Deaf person cannot effectively communicate without an interpreter to request an interpreter. The court created an impossible barrier.

Knox's allegations state this violation clearly. The District Court never addressed it.

**Fifth: Knox's allegations show deliberate indifference.**

The Ohio Supreme Court explicitly warned the municipal court about ADA violations. [RE 9-4, PageID 68]. The court refused to change its procedures. [RE 15, PageID #119, ¶17].

Knowledge plus refusal to act equals deliberate indifference. *Duvall*, 1138; *Center*, 870.

Knox's evidence is stronger than cases that survived dismissal.

**Finally: The District Court misapplied *Tucker* and *Shaffer*.**

29

The District Court relied on *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008), and *Shaffer v. City of Columbus*, 444 F. Supp. 3d 872 (S.D. Ohio 2020). Both cases are distinguishable.

*Tucker* involved plaintiffs who waived their right to an interpreter. Knox never waived anything.

*Shaffer* involved a plaintiff who presented no evidence of inability to communicate. Knox alleged specific inability to communicate.

The District Court ignored the case that actually controls: *Center*—from the same district, with nearly identical facts, holding that effectiveness is a question of fact that survived summary judgment.

For these reasons, this Court should reverse the dismissal and remand for further proceedings.

## IX.   ARGUMENT

### A. STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). In conducting this review, the Court must:

1. Accept all factual allegations in the complaint as true;
2. Draw all reasonable inferences in favor of the plaintiff; and

30

3. Determine whether the complaint states a plausible claim for relief.

At the motion to dismiss stage, the Court does not weigh evidence, assess credibility, or resolve factual disputes.

This standard is especially critical in ADA accommodation cases. *Updike* illustrates why. There, a Deaf plaintiff alleged county employees denied his requests for ASL interpreter during jail detention. *Id.* at 851-53. The district court granted summary judgment to the County. *Id.* at 854.

The 9th Circuit reversed, holding: "Even if a jury ultimately determines that the County is correct—a matter that must be left to the jury where, as here, there are disputes of material fact—summary judgment was improper because the County never meaningfully assessed [plaintiff's] limitations and comprehension abilities." *Id.* at 861.

Yet that's exactly what happened here. The District Court resolved disputed facts about effectiveness—something *Updike* held cannot be done even at summary judgment.

31

The District Court didn't just disagree with Knox's allegations—it violated the fundamental rule of 12(b)(6) review by refusing to accept them as true. When Knox alleged the phone app was ineffective [RE 15, PageID #120, ¶19], the District Court was required by law to accept that allegation. When Knox alleged he was excluded from meaningful participation [RE 15, PageID #114, ¶1], the District Court was required by law to accept that allegation. When Knox alleged he experienced hostility and was told to "read lips" [RE 15, PageID #120, ¶18], the District Court was required by law to accept that allegation.

Instead, the District Court substituted its own factual findings—determining that Knox experienced no "confusion" and that the phone app was "effective"—in direct violation of the Rule 12(b)(6) standard this Court has consistently enforced. See *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (courts must accept factual allegations as true); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same).

This isn't a close call. The Sixth Circuit has repeatedly emphasized that courts cannot resolve factual disputes at the pleading stage. The District Court's error wasn't one of judgment—it was one of jurisdiction. It exceeded the proper role of a court reviewing a 12(b)(6)

32

motion by weighing evidence and resolving disputes that belong to a jury.

## B. THE DISTRICT COURT RESOLVED QUESTIONS OF FACT THAT CANNOT BE DECIDED AT THE MOTION TO DISMISS STAGE

### 1. Center v. City of West Carrollton Establishes That Effectiveness Is a Question of Fact

*Center* controls this case.

Rebecca Center was Deaf. She called police to report property damage. An officer arrived. Center requested an ASL interpreter. The officer used handwritten notes instead. Center testified she wasn't proficient in written English. The officer believed communication was effective. Center testified it wasn't.

The city moved for summary judgment. The district court denied it. Why? "Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment." *Id.* at 870.

The court explained: "Plaintiff has provided evidence that she is not proficient at written English and that she became very frustrated by the use of handwritten notes... Plaintiff has created a genuine issue of

33

material fact as to whether communication through handwritten notes constituted an effective auxiliary aid." *Id.*

That's summary judgment—where evidence is reviewed. If effectiveness cannot be decided at summary judgment, it cannot be decided at motion to dismiss.

Yet that's exactly what the District Court did here. It held that a phone app was "effective communication" despite Knox's allegations to the contrary. [RE 33, PageID #326].

## 2. The District Court Improperly Weighed Facts Instead of Accepting Knox's Allegations

The District Court's opinion reveals the error.

The court stated: "he does not allege he was unable to understand or confused about any information communicated to him... due to the lack of an ASL interpreter at any time." [RE 33, PageID #326].

But Knox did allege inability to effectively communicate. Multiple times:

- He alleged court staff displayed "visible hostility" and told him to "read her lips." [RE 15, PageID #120, ¶18].
- He alleged the clerk responded with "clear irritation, an aggressive tone, and open disdain." *Id.*
- He alleged a court employee "was not a certified interpreter and was not equipped to facilitate effective, legally compliant communication." [RE 15, PageID #120, ¶19].

34

- He alleged the phone app was inadequate and the court's actions "excluded [him] from meaningful participation." [RE 15, PageID #114, ¶1].

The District Court didn't accept these allegations as true. It weighed them. It found them insufficient. That's impermissible at motion to dismiss.

More fundamentally, the District Court's analysis reveals a critical error: it substituted its own judgment for Knox's experience. Effectiveness of communication is inherently subjective—it depends on the individual disabled person's ability to understand and participate. *Bahl*, 785; *Center*, 870.

The District Court's finding that Knox experienced no "confusion" is a post-hoc rationalization that directly contradicts Knox's well-pleaded allegations. Knox alleged:

- He was told to "read lips" when he cannot hear [RE 15, PageID #120, ¶18]
- A non-certified court employee used a phone app while multitasking [RE 15, PageID #120, ¶19]
- He experienced "clear irritation, aggressive tone, and open disdain" from court staff [RE 15, PageID #120, ¶18]
- He was "excluded from meaningful participation" [RE 15, PageID #114, ¶1]

35

These allegations describe the exact opposite of effective communication. The District Court's conclusion that no "confusion" existed ignores that effective communication under the ADA is measured by the disabled individual's subjective experience—not by whether the court believes confusion occurred. At the motion to dismiss stage, Knox's allegations that the phone app was ineffective must be accepted as true.

Within his motion to dismiss, Judge Grimslid relied on *Tucker* for the proposition that Knox must allege "confusion" to state a claim. [RE 24, PageID #188]. But *Tucker* doesn't establish "confusion" as a legal element—it simply describes what the plaintiffs in that specific case failed to show. The *Tucker* plaintiffs waived their right to an interpreter and then sued anyway. 539 F.3d at 540-41. The court held that because they waived the interpreter and presented no evidence of communication problems, they couldn't establish a violation. *Id.* at 541.

Knox didn't waive anything. He requested an interpreter eight days in advance. He requested again six days in advance. He requested again the day of the hearing. Those requests were denied. When he alleges the substitute accommodation (phone app) was ineffective, the

District Court cannot convert that allegation into a "lack of confusion" finding without violating *Iqbal* and *Twombly*.

*Tucker* dealt with waiver and lack of evidence at summary judgment. Knox deals with explicit requests and detailed allegations at motion to dismiss. Using *Tucker* to require "confusion" allegations transforms a fact-specific summary judgment holding into a universal pleading requirement. The Sixth Circuit never imposed such a requirement.

### 3. Knox's Allegations Are Stronger Than *Center*—Which Survived Summary Judgment

Compare the two cases:

***Center*:**

- Single request for interpreter (same-day)
- Officer used handwritten notes
- Center testified she wasn't proficient in written English
- Center testified communication was ineffective
- Case survived summary judgment

**Knox:**

- Multiple requests for interpreter (8 days advance notice)
- Court used phone app operated by non-certified employee
- Knox alleged he uses ASL as primary language
- Knox alleged communication was ineffective and he was excluded
- Case dismissed at motion to dismiss

Knox's allegations are stronger. His advance notice was longer. His requests were more frequent. His evidence of ineffectiveness is more detailed. His procedural posture should have been easier (motion to dismiss vs. summary judgment).

Yet *Center* survived. Knox did not.

That disparity proves the error.

## C. THE DISTRICT COURT FAILED TO APPLY THE "PRIMARY CONSIDERATION" MANDATE

### 1. Federal Regulations Create a Rebuttable Presumption in Favor of the Individual's Choice

28 C.F.R. § 35.160(b)(2) states: "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."

This is not a suggestion. It's a mandate. "Primary consideration" creates a rebuttable presumption that the individual's choice is the appropriate accommodation. *Bahl*, 785; *Updike*, 862.

*Updike* is particularly instructive. There, a Deaf man requested ASL interpreters multiple times during jail detention. *Id.* at 850-52. County employees used written communication instead, believing it was "sufficient." *Id.* at 852. The 9th Circuit reversed summary judgment,

38

holding that the County violated the ADA by failing to give "primary deference to [plaintiff's] requests or context-specific consideration to his requests." *Id.* at 863.

The court emphasized: "Regulations require that public entities give primary consideration to the requests of the deaf individual with respect to auxiliary aid requests and give deference to such requests." *Id.* (citing 28 C.F.R. § 35.160(b)(2)). If the entity doesn't defer to the request, "the burden is on the entity to demonstrate that another effective means of communication exists." *Id.*

The County in *Updike* never met that burden—just like Defendants here.

The burden then shifts. Under *Duvall*, 1138, once Knox requested an ASL interpreter, the Court had to prove one of two things:

1. That an ASL interpreter would fundamentally alter the court's operations, or
2. That an ASL interpreter would create an undue financial or administrative burden.
   28 C.F.R. § 35.164.

The Defendants never claimed either. They never argued fundamental alteration. They never argued undue burden. They simply required a phone app and called it effective.

39

That's not how the regulation works.

## 2. The "Minor Matter" Fallacy: Tennessee v. Lane Prohibits Complexity-Based Discrimination

Judge Grimslid's statement that "the matter was minor and the court therefore did not arrange for an ASL interpreter" [RE 15, PageID #120, ¶19] reveals a fundamental misunderstanding of the ADA.

The Supreme Court addressed this exact error in *Tennessee v. Lane*. There, the Court held that Title II of the ADA was specifically designed to ensure equal access to the courts for disabled individuals. *Id.* at 533-34. The Court emphasized that the right of access to the courts is "the right to be present at all stages of the trial where [the defendant's] absence might frustrate the fairness of the proceedings." *Id.* at 523 (internal quotation omitted).

Critically, *Lane* does not distinguish between a traffic ticket and a felony trial. The Court did not say disabled individuals have a right to interpreters only in "important" cases. It held that "unequal treatment" in the judicial system—regardless of the nature of the proceeding—violates Title II. *Id.* at 531.

40

This principle is rooted in the ADA's text. The statute prohibits discrimination in accessing "services, programs, or activities" of a public entity. 42 U.S.C. § 12132. It does not create a hierarchy where some services warrant accommodation and others don't. The ADA protects **equal access**—not access proportional to the perceived complexity of the matter.

Judge Grimslid's "minor matter" rationale contradicts this foundational principle. Consider:

**What a non-Deaf person experiences for a "$45 traffic ticket":**

- Hears judge explain the charge
- Hears judge explain options (plead guilty, not guilty, request trial)
- Hears judge explain consequences of each option
- Hears judge explain fine amount and payment deadline
- Can ask questions if confused
- Receives complete information to make informed decision

**What Judge Grimslid thought Knox needed for the same ticket:**

- Phone app operated via a multitasking, unqualified employee
- "Minor matter" so full communication unnecessary
- Just get the general idea
- That's good enough for a traffic ticket

That's not equal access. That's a tiered system where disabled individuals receive lesser communication based on a judge's subjective assessment of case importance.

41

The ADA forbids exactly this. A Deaf person has the right to understand a $45 traffic plea just as clearly as a $5 million civil verdict. The magnitude of the legal consequence doesn't determine the magnitude of the accommodation required.

Judge Grimslid's statement wasn't just erroneous—it was discriminatory. It treated Knox's right to effective communication as optional because the underlying case was "minor." That violates *Tennessee v. Lane* and the core principle of equal access.

### 3. The Burden Was on Defendants to Prove "Equally Effective"

Knox requested an ASL interpreter. The Court required the use of a phone app as the unreasonable accommodation.

Appellees will likely cite *Tucker* again to argue that providing any alternative communication method satisfies the ADA. That reading of *Tucker* is wrong.

*Tucker* does not give public entities carte blanche to substitute any communication method they prefer. Rather, *Tucker* requires that when a public entity provides an alternative to the requested auxiliary aid, the alternative must be **"equally effective"** in providing communication

42

**"as effective as that provided to non-disabled persons."** *Id.* at 539

(emphasis added).

Here, Knox alleged the phone app was NOT equally effective:

- The phone app was operated by a non-certified court employee [RE 15, PageID #120, ¶19]
- That employee was simultaneously helping other individuals—she was multitasking [*Id.*]
- Knox uses ASL as his primary language [RE 15, PageID #116, ¶4]
- English proficiency is limited when using the phone app (Would an unqualified employee type everything in the same app to provide full communication access?)
- A non-Deaf person in that courtroom heard everything Judge Grimslid said in real-time, with full linguistic fluency
- Knox did not

These allegations, accepted as true, establish that the phone app was NOT equally effective. The burden under *Tucker* was on Defendants to prove equal effectiveness. They never met that burden—indeed, they never tried. They simply required a phone app and called it sufficient.

That's not how *Tucker* works. The "equally effective" standard is not a rubber stamp. It requires actual equivalence: Does the substitute auxiliary aid provide the disabled person with the same level of access a non-disabled person would have? Knox's allegations say no. The District Court should have accepted that answer.

43

The District Court allowed Defendants to skip this proof entirely by dismissing at the 12(b)(6) stage. That's the error.

Knox alleged the phone app was inadequate. [RE 15, PageID #120, ¶19]. He alleged the court employee operating it was not a qualified interpreter. *Id.* He alleged she was multitasking while trying to help him. *Id.*

Those allegations, accepted as true, create a factual question: Was the phone app equally effective?

The District Court never reached that question. It should have.

**4. The District Court Ignored Primary Consideration Entirely**

The District Court's opinion never mentions 28 C.F.R. § 35.160(b)(2). It never discusses Knox's specific requests for an ASL interpreter. It never analyzes whether the phone app satisfied the "equally effective" standard.

Instead, the court held: "a public entity's only obligation under the ADA is to provide an accommodation that is 'reasonable under the circumstances.'" [RE 33, PageID #325].

That's incomplete. The obligation is more specific:

1. Give primary consideration to what the individual requests
2. If providing something different, prove it's equally effective

44

3. Or prove the requested accommodation creates fundamental alteration or undue burden

The District Court skipped all three steps.

## 5. *Updike* Confirms That Providing One Accommodation Doesn't Excuse Denying Others

In *Updike* the County argued that because it provided some accommodations (e.g., written communication), it satisfied the ADA even though it denied the plaintiff's requested accommodations (ASL interpreter and TTY). *Id.* at 859-60.

The 9th Circuit rejected this argument. The court analyzed each denied accommodation separately:

**TTY Denial**: "[Plaintiff] repeatedly requested a TTD, which was physically available at the jail, but was never provided such a device to assist making phone calls." *Id.* at 857. The court held this created "a genuine issue of material fact" on deliberate indifference because non-Deaf inmates could freely use telephones. *Id.*

**Closed Captioning**: "[Plaintiff] asked MCDC officials to turn on closed captioning several times while in the custody of the County, but avers this request was not accommodated." *Id.* The court held that

45

ignoring repeated requests after being made aware of the disability was evidence of deliberate indifference. *Id.*

**ASL Interpreter**: Despite county employees' belief that written communication was sufficient, the court held that denying ASL interpreter requests without investigation violated the ADA. *Id.* at 862.

The court's holding was clear: "A reasonable jury could find that the County was deliberately indifferent and violated Title II and § 504 when... County employees failed to provide [plaintiff] with an ASL interpreter in a multitude of interactions with County employees, when County employees did not offer use of a TTD, and when County employees did not turn on closed captioning." *Id.* at 863.

Each accommodation matters. Providing one doesn't excuse denying others.

Here, the court eventually provided an interpreter for June 2, but that doesn't excuse:

- Denying Knox's advance requests (May 19, May 21)
- Ignoring Ohio Supreme Court warning (May 22)
- Failing to provide interpreter on May 27
- Using inadequate phone app
- Displaying hostility ("read lips")

46

Under *Updike*, each denied accommodation is separately actionable. The fact that the court eventually provided an interpreter for June 2 doesn't retroactively cure the May 19 denial, the May 21 denial, the May 22 refusal to heed the Ohio Supreme Court warning, or the May 27 denial. Each violation stands on its own. June 2 compliance is irrelevant to May 19, May 21, and May 27 liability.

## D. THE DISTRICT COURT ERRED BY FINDING NO CONCRETE INJURY

### 1. The "Completed Tort" Theory: The Violation Was Complete on May 27

The District Court held that Knox failed to state a claim because he "was afforded the specific accommodation he requested when all substantive proceedings in his case took place." [RE 33, PageID #326]. Judge Grimslid made the same argument below, claiming that his decision to continue the hearing proved Knox was never "excluded" from court services. [RE 24, PageID #186].

Both arguments misunderstand when the injury occurred. The forced continuance wasn't a remedy—it was part of the violation.

A non-Deaf person who appeared on May 27 received the service on May 27. The court processed their case. The court heard their

47

defense or accepted their plea. The court resolved their matter. They went home that day knowing their legal obligation was satisfied.

Knox didn't receive that service on May 27. He received delay. He received a second command to appear. He received the message that his case wasn't important enough to warrant the accommodation federal law requires. The "service" the court provided to non-Deaf people on May 27—resolution of their traffic citation—was denied to Knox on May 27 and deferred for six days.

That six-day deferral is the injury under *Tennessee v. Lane*. The Supreme Court held that Title II protects "meaningful access" to court services. 541 U.S. 509 at 533-34. When a court tells a non-Deaf person "your case is today" but tells a Deaf person "your case is today only if we feel like reasonably accommodating you, otherwise come back next week," that disparate treatment denies meaningful access. The access provided is neither timely nor equal.

Under *Bahl*, the violation was "complete" the moment the service was denied on May 27. The Eighth Circuit held: "The violation **was complete** when [Bahl] was denied an interpreter... Subsequent accommodation **does not erase** that violation." *Id.* at 785 (emphasis

48

added). The court didn't say "delay isn't a violation if you eventually comply." It said the violation is complete when the denial occurs—regardless of later compliance.

The forced continuance reveals the violation. If Knox had walked into the courtroom on May 27 and an ASL interpreter was already there—as should have happened after his May 19 and May 21 requests—his case would have been resolved that day like everyone else's. Instead, he walked into the courtroom and was told: "We didn't think your disability mattered enough to warrant arranging an interpreter in advance. Come back next week." That message—"your disability made us treat you differently"—is the injury *Lane* prohibits.

In *Bahl*, the Eighth Circuit rejected the argument that later compliance moots an earlier denial of an interpreter. The court held: "The violation was complete when [plaintiff] was denied an interpreter... Subsequent accommodation does not erase that violation".

This principle is best understood through the lens of physical access. If a physical barrier, such as a lack of a ramp, prevented a wheelchair user from entering the courthouse for a scheduled hearing on May 27, the public entity could not escape liability by simply

49

providing a ramp for a rescheduled hearing on June 2. The legal injury is the act of exclusion that occurred on May 27. Knox faced a linguistic barrier on May 27 that was just as real and exclusionary as a locked door or a flight of stairs. By proceeding without an interpreter, the Court effectively "locked" the courtroom doors to Knox's meaningful participation.

The facts here are even more compelling than those in *Bahl*:

In *Bahl*, the plaintiff made same-day requests; Knox provided eight days of advance notice.

In *Bahl*, the county eventually provided an interpreter two days later; Knox was forced to wait six days.

Knox's injury occurred in a formal court hearing, a venue where the Supreme Court has emphasized the "fundamental right" of access.

The May 27 violation was a discrete event of discrimination. Knox had a statutory right to participate meaningfully in that specific proceeding. When the Court denied that right and substituted it with an inadequate phone app and a hostile command to "read lips," the injury was finalized. A later "correct" hearing on June 2 does not

50

retroactively grant Knox the access he was entitled to—and was denied—on May 27.

## 2. Dignitary Harm Under *Tennessee v. Lane*

Judge Grimslid argued below that his later compliance—arranging an interpreter for June 2—mooted Knox's claims. To support this, the Judge relied on a string of Title III cases, all of which involve private retail or commercial spaces. [RE 24, PageID #191-92].

This argument fails under this Circuit's precedent because Title III standards for "remediating" physical barriers at a private store do not apply to the mandatory "service" of a judicial proceeding under Title II. As established in *Hill*, providing an interpreter six days later does not erase the completed violation and dignitary harm that occurred on May 27.

*Hill* directly addresses mootness in Title II of the ADA cases. There, a disabled student died after the school allegedly failed to provide required accommodations. *Id.* at *1. The defendants argued the claims were moot because (1) the student's case concluded, and (2) even

51

if violations occurred, they were past violations that couldn't be remedied. *Id.* at *3.

The Sixth Circuit held: "If a plaintiff seeks compensatory damages, the fact that the defendant later complied **does not** make the case moot." *Id.* at *3 (emphasis added). The court explained that compensatory damages for past violations remain viable even after the defendant remedies the violation or the underlying case concludes. *Id.*

The municipal court's compliance on June 2 doesn't erase its non-compliance on May 27. Knox seeks compensatory damages for emotional distress, humiliation, and dignitary harm suffered on May 27. [RE 15, PageID #129]. Those damages claims remain viable under *Hill* regardless of June 2 compliance. The mootness doctrine doesn't allow defendants to avoid liability for past violations by later complying—if it did, defendants would have incentive to violate the ADA and then "moot" litigation by remedying violations only after getting sued.

*Hill* prevents exactly that manipulation. When Knox seeks damages for the May 27 violation, The municipal court's June 2 compliance is irrelevant to mootness. The case isn't moot because Knox

52

seeks remedy for completed past harm, not prospective relief for ongoing violations.

But Knox's injury goes deeper than just the denial of service. It includes the dignitary harm he suffered.

In *Tennessee v. Lane*, the Supreme Court recognized that denial of court access causes dignitary harm. Access to the courts is a fundamental right. When that access is denied, the injury isn't just procedural—it's constitutional and personal.

Knox alleged specific dignitary harms that constitute concrete injuries under Lane:

**Public Humiliation - The Constitutional Violation:** Being told to "read lips" by a hostile clerk in a public courthouse is not merely rude—it is a constitutional violation. [RE 15, PageID #120, ¶18]. When a government employee tells a Deaf person to "read lips," the message is clear: "Your disability is your problem, not ours." This is precisely what *Lane* prohibits. 541 U.S. at 531-32. The Supreme Court held that denying meaningful court access to disabled individuals is unconstitutional because it treats them as less worthy of the state's attention than non-disabled citizens. *Id.*

53

The clerk's command to "read lips" wasn't just ineffective communication—it was an act of discrimination that occurred in the most public and symbolic space in our democracy: a courthouse. A non-Deaf person was never told to "read lips" because a clerk didn't want to accommodate them. That disparate treatment—telling a disabled citizen to overcome their disability so the government doesn't have to accommodate it—is the injury. It's not abstract. It's not speculative. It happened. On May 27, 2025, in a public courthouse, a government employee told Knox his constitutional rights didn't matter because accommodating him was inconvenient.

*Lane* holds that this denial of equal dignity is itself actionable. The Court doesn't need to wait and see if Knox was ultimately convicted of the traffic charge to determine if he was injured. The injury occurred the moment the clerk told him to "read lips" instead of providing the accommodation the ADA requires. That moment of public degradation—being treated as less than equal in a forum where equality is supposed to be guaranteed—is the concrete injury Lane recognizes.

54

**Degradation**: Being forced to use an inadequate phone app operated by an unqualified employee who was multitasking in a crowded courtroom. [RE 15, PageID #120, ¶19]. A non-Deaf person received the judge's full attention and professional interpretation of legal rights. Knox received a multitasking employee with the use of a phone app. That's not equal treatment. That's not equal dignity.

**Exclusion from Participation**: Unable to effectively understand or participate in his own judicial proceeding. [RE 15, PageID #114, ¶1]. *Lane* makes clear that the right to participate meaningfully is itself the protected interest—not some downstream consequence of participation. 541 U.S. at 533-34.

These harms occurred on May 27. They cannot be undone by June 2. The Constitution doesn't guarantee dignity "eventually"—it guarantees it at the moment of government interaction. Knox's dignity was violated because of his disability on May 27, 2025. That violation is complete, actionable, and concrete.

## 3. Statutory Standing: The Denial Itself Is the Injury

Under the ADA, the denial of a required "service, program, or activity" is the injury. 42 U.S.C. § 12132.

55

Knox had a right to attend the May 27 hearing with an ASL interpreter. That's not disputed. The municipal court denied that right. That denial is the injury.

The fact that the hearing was rescheduled doesn't erase the fact that the first hearing was a site of discrimination.

Compare to other civil rights contexts:

- A voter turned away from the polls on Election Day isn't made whole by being allowed to vote the next week.
- A student excluded from graduation isn't made whole by attending next year's ceremony.
- A litigant denied access to court isn't made whole by accessing court later.

The May 27 hearing was Knox's hearing. He had a right to participate meaningfully in that specific proceeding. He was denied that right. He was intentionally excluded from that service because of his disability. That's the injury.

## 4. The District Court Ignored Knox's Allegations of Harm

The District Court stated Knox "does not allege any facts suggesting... he suffered any specific injury." [RE 33, PageID #326].

That's demonstrably wrong. Knox alleged:

- Emotional distress [RE 15, PageID #121, ¶21; PageID #129]
- Humiliation [RE 15, PageID #120, ¶18]
- Loss of dignity [RE 15, PageID #121, ¶21]

56

- Frustration [RE 15, PageID #120, ¶18]
- Inability to effectively communicate [RE 15, PageID #120, ¶19]
- Exclusion from meaningful participation [RE 15, PageID #114, ¶1]

The District Court didn't analyze these allegations. It didn't

explain why they were insufficient. It simply noted June 2 and moved

on.

That's the error.

## E. THE COURT'S "CATCH-22" ADMINISTRATIVE BARRIER VIOLATES THE ADA

### 1. The Text of 28 C.F.R. § 35.130(b)(3) Prohibits Discriminatory Procedures

The full text of 28 C.F.R. § 35.130(b)(3) states:

> "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
>
> > (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
> > (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
> > (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State."

The court's in-person requirement violates subsections (i) and (ii).

57

**Subsection (i): Subjecting disabled individuals to discrimination.** A non-Deaf person calls once, speaks to a clerk in English, and has their court business handled. A Deaf person must: (1) call via VRS and be refused, (2) call again and be hung up on, (3) appear in person without communication access, and (4) appear again after being rescheduled. This disparate treatment is "the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." That's subsection (i).

**Subsection (ii): Defeating or substantially impairing ADA objectives.** The objective of the ADA's communication provisions is to ensure that disabled individuals can access services through methods that work for their disability. 28 C.F.R. § 35.160(a). The court's policy requires Deaf individuals to appear without communication access as a precondition to requesting communication access. This "defeat[s] or substantially impair[s] accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." That's subsection (ii).

This isn't abstract. The VRS transcripts document the exact violation. When Knox called on May 21, the clerk told him: "That's how

58

our court works. That's how our court runs. That's always how our court has been run." [RE 9-12, PageID #94]. That statement describes a "method of administration"—a systematic procedure for handling accommodation requests. And that administrative method violates 28 C.F.R. § 35.130(b)(3).

*S.S.*, *3, applied this regulation. The court held: "Public entities are prohibited from utilizing 'criteria or methods of administration' that have the effect of defeating or substantially impairing the objectives of the program."

The court added: "A public entity cannot force a disabled person to jump through extra, burdensome hoops that non-disabled people do not face." *Id.*

That's the violation here.

## 2. The Discriminatory Hurdles: Non-Deaf vs. Deaf Disparity

The court's "standard procedure" imposes a disparate burden on Deaf individuals. *S.S.* prohibits exactly this type of disparity.

Let's be concrete about what "disparate burden" means in this case:

**What a non-Deaf person does to resolve a traffic citation:**

59

1. Receives citation in mail with hearing date
2. Has questions? Calls court once: (419) 674-4362
3. Clerk answers in spoken English
4. Person asks questions, gets answers
5. Appears on hearing date
6. Hears everything judge says in spoken English
7. Responds verbally
8. Case resolved

**Total barriers faced:** Zero
**Total attempts required:** One phone call (optional)
**Communication access:** Automatic and complete

### What Knox had to do under the court's procedure:

1. Receives citation with hearing date
2. Has questions? Calls court via VRS: Attempt #1 (May 19)
   - Result: Denied. Told to appear in person to request interpreter
3. Calls court again via VRS: Attempt #2 & #3 (May 21)
   - Result: Denied. Clerk hung up on him
4. Files complaint with Ohio Supreme Court (May 22)
   - State official calls court
   - Court refuses to change
5. Appears in person: Attempt #4 (May 27)
   - Result: No interpreter present
   - Hostile clerk tells him to "read lips"
   - Uses inadequate phone app
   - Gets rescheduled
6. Appears in person again: Attempt #5 (June 2)
   - Finally gets interpreter
   - Case resolved

**Total barriers faced:** Multiple administrative hoops, hostile

treatment, denial of access

60

**Total attempts required:** Five (three phone calls, two in-person appearances)

**Communication access:** Denied on May 19, May 21, and May 27; finally provided June 2

This disparity isn't incidental. It's structural. It's built into the court's "standard procedure."

And it violates 28 C.F.R. § 35.130(b)(3).

Judge Grimslid argued below in his motion to dismiss that the ADA doesn't require courts to accept accommodation requests by phone. [RE 24, PageID #189]. That argument misses the point. The question isn't whether the ADA mandates phone requests. The question is whether the court's procedure has "the effect of subjecting qualified individuals with disabilities to discrimination." 28 C.F.R. § 35.130(b)(3)(i).

The answer is yes. The court's procedure—requiring in-person appearance to request an interpreter—has discriminatory effect because it forces disabled individuals through hoops that non-disabled individuals never face. A non-Deaf person calls once, speaks to a clerk in spoken English, and has their business handled. A Deaf person calls

61

twice using VRS, gets refused both times, has to file a complaint with the Ohio Supreme Court, and must appear in person without communication access just to request communication access for a future appearance.

That outcome discriminates. Whether the court uses phone, email, carrier pigeon, or smoke signals to process requests is irrelevant. What matters is that the procedure creates a disparate burden. *S.S.* prohibits exactly this: administrative methods that have discriminatory effect, regardless of how the entity labels its procedures.

The court chose a procedure that requires Deaf individuals to overcome their disability— communicate without an interpreter—as a precondition to requesting an interpreter. That's the administrative Catch-22 that violates 28 C.F.R. § 35.130(b)(3). The regulation doesn't ask whether the entity intended to discriminate or whether the procedure seems facially neutral. It asks whether the procedure "has the effect" of discrimination. Here, the answer is undeniable.

## 3. The Impossible Barrier: You Need an Interpreter to Request an Interpreter

The VRS transcripts document the impossible barrier:

Clerk (May 19): "You would come to court, we would realize that we need to issue an interpreter, and then you would be scheduled for another court date. That's just how that works." [RE 9-12, PageID #92].

Clerk (May 21): "When you come into court that day, we will request the interpreter that day. That's how our court works. That's how our court runs. That's always how our court has been run." [RE 9-12, PageID #94].

Parse the logic:

1. Knox needs an interpreter to effectively communicate at court.
2. The court requires him to appear at court to request an interpreter.
3. But appearing at court without an interpreter means appearing without effective communication.
4. Which is what he's trying to request.

This is circular. It defeats its own purpose. A Deaf person cannot effectively communicate at court without an interpreter to request an interpreter for court.

The ADA exists to ensure effective communication for each single service that Knox is to participate in. This policy denies effective communication as a precondition to requesting access.

That defeats the ADA's objective.

## 4. This Is a Systemic, Not Individual, Violation

Notice the clerk's language on May 21: "That's how our court works. That's how our court runs. That's always how our court has been run." [RE 9-12, PageID #94].

This isn't one clerk's mistake. It's institutional policy. "Always how our court has been run."

This moves the case from a one-time error to an illegal system-wide procedure. Under *S.S.*, such systematic methods of administration that create barriers for disabled individuals violate the ADA—even if the entity later corrects individual instances.

The violation isn't just May 27. It's the ongoing policy that caused May 27 and will cause future violations unless enjoined.

## F. KNOX'S ALLEGATIONS SHOW DELIBERATE INDIFFERENCE

## 1. Notice and Refusal: The Timeline of Deliberate Indifference

Deliberate indifference requires two elements: (1) knowledge that harm to a federally protected right is substantially likely, and (2) failure to act upon that knowledge. *Duvall*, 1138.

64

These elements distinguish negligence from intentional discrimination. Negligence is not knowing about the problem. Deliberate indifference is knowing about the problem and choosing not to fix it.

*Duvall* makes this distinction clear. Christopher Duvall is severely hearing-impaired (completely deaf in one ear, severe impairment in the other). *Id.* at 1130. Unlike many Deaf individuals, Duvall does not use ASL because he doesn't sign well enough. *Id.* His primary mode of communication is through the written word, supplemented by hearing aids, visual cues, and lip reading in one-on-one conversations. *Id.*

In 1994-1995, Duvall was a party to a family law case (dissolution of marriage) in Kitsap County Superior Court, Washington. *Id.* at 1130-31. He realized he would not be able to participate meaningfully in trial without accommodation. *Id.* at 1131. He requested videotext display (real-time transcription) from the court's ADA coordinator and other officials, explaining that the courtroom's assistive listening device was inadequate for his specific needs. *Id.* at 1131-32. The county officials never investigated whether videotext display was available. *Id.* at 1132.

65

At trial in June 1995, Judge Kruse denied Duvall's motion for videotext display, stating it wasn't available in Kitsap County. *Id.* at 1131. Duvall struggled to follow proceedings despite being allowed to move around the courtroom. *Id.* For a subsequent hearing in August 1995, Duvall again requested videotext display. *Id.* at 1132. County officials simply responded that the hearing would be in the same courtroom with the same equipment. *Id.* No one investigated availability. *Id.*

After the case concluded, when county officials actually investigated for the first time, they discovered that multiple court reporting firms in the region could provide videotext display—and in fact provided it for Duvall's subsequent hearings within three days of the request. *Id.* at 1132-33.

The Ninth Circuit held this was deliberate indifference because the county officials had "knowledge that a harm to a federally protected right is substantially likely" (Duvall repeatedly requested videotext display and explained why other accommodations were inadequate) and "failure to act upon that knowledge" (officials never investigated availability despite having authority and duty to do so). *Id.* at 1138. The

66

court emphasized: once a public entity has notice of a likely ADA violation, failure to investigate and act moves from mere negligence to deliberate indifference—i.e., intentional discrimination. *Id.*

*Updike* provides a more recent application of the deliberate indifference standard in a jail detention context. In *Updike,* David Updike was Deaf and used ASL as his primary language. *Id.* at 851. During jail detention, he made repeated requests for an ASL interpreter and TTY device. *Id.* at 852-53. County employees denied these requests, believing written communication was sufficient. *Id.*

The 9th Circuit held that a reasonable jury could find deliberate indifference because:

1. **County employees knew Updike was Deaf** but failed to conduct any assessment of his accommodation needs. *Id.* at 862-63.
2. **Repeated requests were denied** despite the County having a contract with an interpretation service. *Id.* at 852, 862.
3. **No investigation was conducted** to determine what accommodations might be necessary. *Id.* at 863 ("At no time was Updike assessed to determine to what extent he would need accommodation to ensure that he could communicate effectively with others during his time in custody.").
4. **Primary consideration was not given** to Updike's specific requests for ASL interpreter and TTY. *Id.*

67

The court emphasized: "A reasonable jury could find that the County was deliberately indifferent and violated Title II and § 504 when it did not conduct an informed assessment of [plaintiff's] accommodation needs, when it did not give primary deference to [plaintiff's] requests or context-specific consideration to his requests, when County employees failed to provide [plaintiff] with an ASL interpreter in a multitude of interactions." *Id.*

Knox's facts are stronger than *Updike*:

- *Updike* requested accommodations after arrest; Knox gave 8 days advance notice
- *Updike* involved county employees; Knox involved state Supreme Court warning
- *Updike* survived summary judgment; Knox was dismissed at motion to dismiss
- *Updike* had no state-level intervention; Knox had Ohio Supreme Court intervention

If *Updike* established deliberate indifference sufficient to survive summary judgment, Knox's allegations easily establish deliberate indifference sufficient to survive motion to dismiss.

That's exactly what happened here. Knox's allegations show:

**Element 1: Knowledge that harm was substantially likely**

68

May 19, 2025: Knox gave notice by calling and requesting an interpreter. [RE 9-12, PageID 91-93]. The court knew:

- Knox was Deaf
- Knox needed an interpreter for May 27
- Knox was requesting one 8 days in advance

May 21, 2025: Knox gave notice again. [RE 9-12, PageID #94-95; RE 9-2, PageID #57-58]. The court knew:

- Its policy violated the law (Knox told them explicitly)
- Refusing to accommodate was illegal
- Knox would appear May 27 without communication access

May 22, 2025: The Ohio Supreme Court gave official notice. [RE 15, PageID #119, ¶17]. Bruno Romero from the Language Services Section called the court personally. This wasn't a Deaf individual asking for help anymore. This was the state's highest court saying: "Your policy violates the ADA. Fix it."

At this point, the court had actual knowledge—not speculation, not possibility, but certainty—that harm to Knox's federally protected rights was substantially likely. The state Supreme Court told them so.

**Element 2: Failure to act upon that knowledge**

The court's response to all this notice? Refusal.

69

Romero stated: "Regrettably, the court refused to change their process." [RE 15, PageID #119, ¶17]. Not "the court will look into it." Not "the court will make changes." The court **refused**.

May 27, 2025: The predicted harm occurred. Exactly as Knox warned. Exactly as the Ohio Supreme Court warned. No interpreter present. Phone app instead. "Minor matter" excuse. Everything Knox said would happen, happened.

This is the textbook definition of deliberate indifference under *Duvall*:

- Knowledge: four separate notices, including from state Supreme Court
- Substantially likely harm: explicit warnings that May 27 would be a violation
- Failure to act: explicit refusal to change policy

When a public entity receives notice from the state's highest court that its policies violate federal disability law, and the entity explicitly refuses to change, that entity has crossed the line from negligence to intentional discrimination.

The Ohio Supreme Court warning is the smoking gun. It establishes that the municipal court wasn't ignorant of the ADA—it was

70

defiant. Knowledge plus refusal equals deliberate indifference equals intentional discrimination.

That's not negligence. That's not oversight. That's deliberate indifference. Knox's allegations clearly state this claim.

The court had notice from Knox (thrice), notice from the Ohio Supreme Court, and five days to arrange an interpreter before May 27. They chose not to act.

## 2. The Ohio Supreme Court Warning: Knowledge of "Strong Likelihood"

On May 30, 2025—after the violation—the Ohio Supreme Court sent a formal written letter to Judge Grimslid. [RE 9-4, PageID #68].

The letter stated: "the Americans with Disabilities Act (ADA) requires courts to provide 'appropriate auxiliary aids and services.'" *Id.*

But notice: The court received a phone call on May 22 before the May 27 hearing. The court knew on May 22 that its policies were problematic. The court was explicitly told to change. The court refused.

Under *Duvall*, deliberate indifference exists when a defendant has "knowledge that a harm to a federally protected right is substantially likely" and fails to act. 260 F.3d at 1138.

71

The Ohio Supreme Court's intervention gave the municipal court actual knowledge that harm was substantially likely. Not might happen. Was substantially likely. The state's own court system was warning them.

They failed to act.

### 3. Judge Grimslid's Recusal: Consciousness of Wrongdoing

On May 28, 2025—one day after Knox's formal complaint—Judge Grimslid recused himself. [RE 15, PageID #122, ¶22]. No explanation. Just recusal.

This recusal is evidence of deliberate indifference. Why?

Because it suggests Judge Grimslid recognized a "strong likelihood that [his] policies resulted in a violation of federally protected rights"—the second prong of the deliberate indifference test. *Duvall*, 1138.

Think about what happened:

- Knox appeared May 27 without interpreter
- Knox sent detailed complaint that afternoon documenting violations
- Judge Grimslid gave one-sentence response: "At this time, there is no response to your highlighted proposed settlement terms." [RE 15, PageID #121, ¶21]
- Next day, May 28, Judge Grimslid recused

72

If Judge Grimslid believed his conduct was lawful, why recuse? Judges don't recuse from traffic cases because someone complains. They recuse when there's a legitimate concern about impartiality or appearance of impropriety.

The most reasonable inference: Judge Grimslid recognized his May 27 conduct violated federal law. His immediate recusal after Knox's complaint suggests consciousness of wrongdoing.

## 4. Knox's Evidence Is Stronger Than Cases That Survived Dismissal

Neither *Center* nor *Dillery* involved:

- Advance notice from the plaintiff (Knox: 8 days)
- Multiple explicit requests (Knox: May 19, May 21)
- State-level intervention before the violation (Knox: May 22)
- Documented refusal to change after state warning (Knox: Romero's statement)
- Immediate judicial recusal after complaint (Knox: May 28)

Knox has all of that.

His allegations of deliberate indifference are stronger than cases that survived not just dismissal, but summary judgment.

73

## G. THE DISTRICT COURT MISAPPLIED *TUCKER* AND *SHAFFER*

### 1. *Tucker* Is Distinguishable

In *Tucker*, Deaf plaintiffs were offered an interpreter for their criminal hearing. They waived it. They later sued.

The Sixth Circuit held no violation occurred because plaintiffs waived their right to an interpreter.

Knox never waived anything. He requested an interpreter. Repeatedly. The court denied his requests. Repeatedly.

*Tucker* doesn't apply.

### 2. *Shaffer* Is Distinguishable

In *Shaffer*, a Deaf plaintiff complained about lack of an interpreter during jail booking. But the plaintiff presented no evidence he was unable to communicate through written notes.

Knox alleged specific inability to effectively communicate. He alleged hostility. He alleged frustration. He alleged ineffectiveness.

*Shaffer* doesn't apply.

### 3. *Updike* Shows Why This Case Shouldn't Have Been Dismissed

*Updike* provides the proper analytical framework that the District Court should have followed.

**Factual Parallels:**

The parallels between *Updike* and this case are striking. In *Updike*, the plaintiff was Deaf and used ASL as his primary language—exactly like Knox. *Id.* at 851. During jail detention, he made multiple requests for an ASL interpreter and was denied. *Id.* at 852-53. County employees used written communication instead, believing it was "sufficient." *Id.* at 852. The plaintiff disputed effectiveness, alleging the communication was inadequate. *Id.* at 860-61. The county had a contract with an interpretation service, so resources were available. *Id.* at 852. The district court granted summary judgment to the county. *Id.* at 854. The 9th Circuit reversed. *Id.* at 863.

Knox's case presents even stronger facts. While *Updike* involved same-day requests during detention, Knox gave eight days' advance notice.

While *Updike* had no external intervention, Knox had the Ohio Supreme Court formally warning the municipal court through a phone

75

call about ADA violations before May 27. And while *Updike* involved written notes as the substitute accommodation, Knox was required to use a phone app with an unqualified, multitasking court employee—an even less adequate alternative.

**Legal Holdings Applied:**

The 9th Circuit in *Updike* held that these allegations created genuine issues of material fact on four critical points.

First, whether the substitute accommodation was actually effective cannot be determined without trial. *Id.* at 860-61. The court emphasized that the entity's belief about effectiveness is not dispositive—the disabled individual's experience controls. *Id.*

Second, the entity must give "primary deference" to the disabled individual's specific requests. *Id.* at 862-63. The burden is on the entity to prove why a different accommodation is equally effective. *Id.*

Third, the entity must conduct an "informed assessment" of accommodation needs before denying the request. *Id.* at 863. Simply assuming a substitute will work is insufficient. *Id.*

76

Fourth, providing one accommodation doesn't excuse denying others. *Id.* at 857, 863. Each denied request creates a separate potential violation. *Id.*

**The Critical Comparison:**

If *Updike*—with weaker facts—survived summary judgment (where evidence is reviewed and weighed), then Knox—with stronger facts—should easily survive motion to dismiss (where allegations must be accepted as true). This isn't a close call. *Updike* establishes that when a Deaf plaintiff alleges (1) repeated requests for an ASL interpreter, (2) denial and substitution of a different method, (3) that the substitute was ineffective, and (4) the entity had resources available, those allegations create fact questions requiring trial. Knox alleged all four elements—plus the Ohio Supreme Court warning, which *Updike* didn't have.

**What the District Court Actually Did:**

When faced with four cases, the District Court relied on *Tucker* and *Shaffer*. But *Tucker* involved plaintiffs who waived their right to an interpreter—the opposite of this case. And *Shaffer* involved a plaintiff who presented no evidence of communication problems—again, the

77

opposite of this case where Knox alleged specific, detailed communication failures.

The District Court ignored *Center*, from the same district, with nearly identical facts, which held that effectiveness is a fact question that survived summary judgment. The District Court also failed to consider *Updike*, which held that nearly identical allegations required reversal of summary judgment.

The District Court selected the two cases that don't apply (waiver and no allegations of communication problems) while ignoring the two cases that directly control (effectiveness is fact question, deliberate indifference established). That's a reversible error.

**Why This Matters:**

*Updike* represents how appellate courts actually analyze these cases. The 9th Circuit didn't say: "The county provided some accommodation, case over." It said: "Disputed facts exist about whether that accommodation was effective, adequate, and satisfied the entity's legal obligations. These disputes require trial." *Id.* at 860-61.

That's exactly what should have happened here. Knox alleged that communication was ineffective. [RE 15, PageID #120, ¶¶18-20]. He

78

alleged the phone app was inadequate. [RE 15, PageID #120, ¶19]. He alleged he was excluded from meaningful participation. [RE 15, PageID #114, ¶1]. He alleged the court gave no primary consideration to his requests. [RE 9-12, PageID #94; RE 9-2, PageID #57]. The District Court conducted no assessment of his needs. [undisputed].

Under *Updike*, these allegations create fact questions that cannot be resolved at the motion to dismiss stage—let alone summary judgment. Yet the District Court resolved them anyway, substituting its judgment for Knox's experience and determining as a matter of law that the phone app was "effective" despite Knox's allegations to the contrary.

The District Court's error was choosing cases about waiver and lack of allegations when binding precedent (*Center*) and persuasive authority (*Updike*) clearly established that effectiveness disputes must survive dismissal. For these reasons, the dismissal should be reversed.

## 4. The Court Ignored Binding Precedent

The District Court relied on *Tucker* (distinguishable) and *Shaffer* (distinguishable).

It ignored *Center* (controlling).

79

*Center* is from the same district. It involves nearly identical facts. It held effectiveness is a fact question. It survived summary judgment.

Knox should have survived the motion to dismiss.

## 5. Judicial Immunity Does Not Shield Administrative ADA Violations

Judge Grimslid argued in his motion to dismiss that arranging for an ASL interpreter is a "quintessentially judicial" act protected by absolute immunity. [RE 24, PageID #199]. That argument conflates two distinct functions: adjudication and administration.

The Supreme Court in *Forrester v. White*, 484 U.S. 219 (1988), faced an identical conflation. There, an Illinois state court judge argued that his decision to hire and fire a probation officer was a judicial act protected by absolute immunity. *Id.* at 220-21. The judge reasoned that because probation officers assisted him in making judicial decisions, personnel decisions affecting them must also be judicial. *Id.* at 229. The Court rejected this reasoning. *Id.* at 229-30.

The Court held: "It is the nature of the function performed, not the identity of the actor who performed it, that determines whether absolute immunity applies." *Id.* at 229. The Court distinguished

80

between judicial acts (resolving disputes between parties) and administrative acts (hiring and firing employees) even when both are performed by judges. *Id.* The Court emphasized that employment decisions "may have been quite important in providing the necessary conditions of a sound adjudicative system" but "were not themselves judicial or adjudicative." *Id.*

Judge Grimslid's duty to arrange for an ASL interpreter is administrative, not judicial. The ADA imposes a ministerial obligation on public entities: when a disabled person requests accommodation, the entity must provide it unless doing so would create fundamental alteration or undue burden. 28 C.F.R. § 35.164. This is not a discretionary judgment call subject to judicial immunity—it's a non-discretionary administrative mandate.

Consider the parallel *Forrester* drew. A judge who hires a probation officer cannot meaningfully be distinguished from a district attorney who hires an assistant district attorney, or "from any other Executive Branch official who is responsible for making such employment decisions." *Id.* at 229. The same holds here. A judge who arranges for an ASL interpreter cannot meaningfully be distinguished

81

from a court clerk who does the same thing, or from any other public official responsible for ensuring ADA compliance.

The distinction becomes clear when examining what Judge Grimslid actually did. On May 27, he faced a choice: proceed with the hearing using a phone app, or continue the hearing to arrange an ASL interpreter. That choice—whether to provide the mandated accommodation immediately or defer it—is administrative. It requires no judicial deliberation, no weighing of evidence, no exercise of judicial discretion. The ADA already made the decision: provide the requested accommodation unless fundamental alteration or undue burden exists.

Judge Grimslid never claimed fundamental alteration or undue burden. He simply decided the matter was "minor" and therefore didn't warrant arranging an interpreter. [RE 15, PageID #120, ¶19]. That determination—deciding which cases merit full ADA compliance and which don't—is not judicial deliberation. It is an administrative failure to comply with a statutory mandate.

*Forrester* is instructive on another point. The Court held that even crucial administrative functions don't receive absolute immunity simply because a judge performs them. 484 U.S. at 229. Arranging for an

82

interpreter may be important to providing "necessary conditions of a sound adjudicative system," *id.*, but that doesn't transform an administrative duty into a judicial act. When Congress imposed ADA obligations on courts, it didn't exempt judges from complying with those obligations just because compliance might affect how quickly cases proceed.

The District Court never addressed *Forrester* or the administrative-versus-judicial distinction. That omission enabled the fundamental error: treating every act a judge performs in a courtroom as inherently judicial. But as *Forrester* held, "it is the nature of the function performed... that determines whether absolute immunity applies." 484 U.S. at 229. Arranging for auxiliary aids is administrative. Judge Grimslid's failure to arrange an ASL interpreter before May 27—despite eight days' notice—is not shielded by judicial immunity.

## X.   CONCLUSION

The Hardin County Municipal Court violated federal law. It refused to process Knox's advance requests for an interpreter. It required him to appear in person without communication access just to request communication access. It provided a phone app instead of the

83

interpreter he requested. It told him the matter was too 'minor' for an interpreter.

Those violations are clear. The evidence is documented. The legal standard is established. The District Court erred by dismissing Knox's case at the pleading stage. It resolved factual questions that cannot be resolved at motion to dismiss. It ignored binding precedent from the same district. It misapplied inapplicable cases.

This Court should **reverse** the District Court's dismissal, **remand** this case for further proceedings consistent with this Court's opinion, and **award** Appellant his costs on appeal—including the appellate filing fee—pursuant to Fed. R. App. P. 39.

-----------------------------------------------------------------

Respectfully submitted this 10th
of March, 2026

Andrew Lee Eugene Knox
P.O. Box 344
Russells Point, OH 43348
Knox.andrew19@gmail.com
Pro Se Appellant

84

## XI.   CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 12,998 words, as determined by the word-count function of Google Docs, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Google Docs in 14-point Century Schoolbook font.

Date: March 11, 2026

Andrew Lee Eugene Knox
P.O. Box 344
Russells Point, OH 43348
Knox.andrew19@gmail.com
Pro Se Appellant

## XI.    CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a true and correct copy of the above and foregoing document placed in U.S. mail addressed to the following:

Linda L. Woeber
Montgomery Jonson LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
513-768-5239
lwoeber@mojolaw.com
Attorney for Judge Gregory A. Grimslid

Cooper D. Bowen
Montgomery Jonson LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
513-768-5242
cbowen@mojolaw.com
Attorney for Judge Gregory A. Grimslid

Teresa L. Grigsby
Spengler Nathanson PLL
900 Adams St.
Toledo, Ohio 43604
419-252-6261
tgrigsby@snlaw.com
Attorney for Hardin County Municipal Court & Clerk Emily Kissling

Jennifer A. McHugh
Spengler Nathanson PLL
900 Adams St.
Toledo, Ohio 43604
419-252-6233
jmchugh@snlaw.com
Attorney for Hardin County Municipal Court & Clerk Emily Kissling

Date: March 11, 2026

Andrew Lee Eugene Knox
P.O. Box 344
Russells Point, OH 43348
Knox.andrew19@gmail.com
Pro Se Appellant

86

# XIII. DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry (RE) No. | Description | Referenced PageID(s) |
|---|---|---|
| **RE 1** | Complaint with jury demand | PageID #1 |
| **RE 9** | Notice of Filing Exhibits E through Q | PageID #59, #61, #66, #68, #70, #73, #80 |
| **RE 9-2** | Exhibit F - VRS Transcription | PageID #57 |
| **RE 9-3** | Exhibit K - Formal Complaint Email | PageID #59, #61 |
| **RE 9-4** | Exhibit G - Ohio Supreme Court letter | PageID #66, #68 |
| **RE 9-5** | Exhibit I - Handwritten Note | PageID #70 |
| **RE 9-8** | Exhibit H - Knox Letter to Court | PageID #73 |
| **RE 9-9** | Exhibit M - Screenshots | PageID #80 |

87

| RE 9-12 | VRS Transcript pages | PageID #92, #94, #95 |
| --- | --- | --- |
| RE 15 | First Amended Complaint | PageID #114, #116, #118–123, #129 |
| RE 24 | Grimslid Motion to Dismiss | PageID #186, #188, #189, #191–192, #199 |
| RE 25 | Knox Opposition to Grimslid MTD | PageID #209 (*passim*) |
| RE 27 | Court/Kissling Motion to Dismiss | PageID #252 (*passim*) |
| RE 29 | Knox Opposition to Court MTD | PageID #278 (*passim*) |
| RE 33 | Memorandum Opinion & Order | PageID #319 |
| RE 34 | Final Judgment Entry | PageID #329 |
| RE 35 | Notice of Appeal to the Sixth Circuit | PageID #330 |

88