CASE NUMBER 26-3108

_____

IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

_____

ANDREW LEE EUGENE KNOX
Plaintiff-Appellant,

v.

HARDIN COUNTY MUNICIPAL COURT, et al.,
Defendants-Appellees

_____

On Appeal from the United States District Court, Southern District of Ohio, Case
No. 3:25-cv-01174-JRK

_____

**BRIEF OF DEFENDANT-APPELLEE HON. GREGORY GRIMSLID**

_____

LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP.
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Tel:   (513) 768- 5239 (Woeber)
       (513) 768- 5242 (Bowen)
Fax:   (513) 768-9244
Email: lwoeber@mojolaw.com
       cbowen@mojolaw.com

*Counsel for Defendant-Appellee Hon.
Gregory Grimslid*

i

CASE NUMBER 26-3108

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANDREW LEE EUGENE KNOX

Plaintiff-Appellant,

v.

HARDIN COUNTY MUNICIPAL COURT, et. al.,

Defendants-Appellees

_____

## DISCLOSURE OF CORPORATE AFFILIATIONS

_____

Pursuant to FRAP 26.1(a) and 6 Cir. R. 26.1, Defendant-Appellee Hon. Gregory Grimslid makes the following disclosure:

1. *Are said parties a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:*
   No.
2. *Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If Yes, list the identity of such corporation and the nature of the financial interest:*

No.

ii

## TABLE OF CONTENTS

**DISCLOSURE OF CORPORATE AFFILIATIONS**..................................ii

**TABLE OF CONTENTS**...............................................................iii

**TABLE OF AUTHORITIES**..........................................................v

**STATEMENT REGARDING ORAL ARGUMENT**................................ix

**STATEMENT OF ISSUES**...........................................................1

**STATEMENT OF THE CASE**.......................................................1

**SUMMARY OF THE ARGUMENT**................................................4

**ARGUMENT**..........................................................................6

**II. The District Court Properly Determined Appellant Failed to State a Viable Claim pursuant to Civ. R. 12(b)(6) under the ADA, the Rehabilitation Act, 42 U.S.C. § 1983, and O.R.C. 4112.02(G)**...............................................................................6

**A. The District Court properly determined that Knox was not denied meaningful access to the benefits of the Hardin County Municipal Court's services, programs, or activities, or that he was denied access to the courts**..........................................................6

**B. The District Court properly determined that Judge Grimslid did give primary consideration to Knox's accommodation request, and even if he did not, Knox did not allege that the alternative auxiliary aids were ineffective.**..............................................................15

**C. The deliberate indifference standard is inapplicable to Knox's claims for injunctive and declaratory relief and, notwithstanding, Knox's allegations fail to support that Judge Grimslid acted with deliberate indifference.**.............................................................22

**D. Knox's argument that the Municipal Court's procedures created a "Catch-22" scenario does not support his claim**..........................................................................................25

**III. Knox's Claims under the ADA and the Rehabilitation Act are Moot**..................................................................................**26**

**IV. Dismissal of the Appellant's Claim Against Judge Grimslid Under 42 U.S.C. § 1983 Should be Affirmed for a Reason Not Fully Addressed in the District Court's Order**..................................................................**32**

    **A. Judge Grimslid has sovereign immunity for Knox's official capacity claim pled against him**..............................................**32**

        **i.  The *Ex parte Young* exception to sovereign immunity does not apply to Knox's claims for injunctive relief**.................................................................................**34**

    **B. Appellant conceded he is not bringing claims against Judge Grimslid in his individual capacity, rendering an analysis of judicial immunity unnecessary**................................................**37**

**CONCLUSION**...................................................................................**38**

**CERTIFICATE OF COMPLIANCE**................................................**40**

**CERTIFICATE OF SERVICE**..........................................................**41**

**DESIGNATION OF DISTRICT COURT RECOR>**.....................**42**

# TABLE OF AUTHORITIES

## Cases

*A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)....8

*Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) ...........................................28

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....6

*Assi v. Hanshaw,* 625 F. Supp. 3d 722 (S.D. Ohio 2022)..........................................20

*Bacon v. Walgreen Co.,* 91 F. Supp. 3d 446, 451-53 (E.D.N.Y. 2015) ..................28

*Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ....................................37

*Bahl v. County of Ramsay,* 695 F.3d 778 (8th Cir. 2012)..........................................11

*Barry v. Lyon*, 834 F.3d 706, 2016 U.S. App. LEXIS 15671, at *4 (6th Cir. 2016)
.....................................................................................................................................27

*Bedford v. Kasich*, 2011 U.S. Dist. LEXIS 51903 at *24 (S.D. Ohio 2011)...........34

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007).......................................................................................................................6

*Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858, 858 (D. Minn. 2019) ...........28

*Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).........10

*Bowie v. Hamilton Cty. Juvenile Court,* 2021 U.S. App. LEXIS 1581, *7 (6th Cir.
2021) ......................................................................................................................26

*Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012) ........29

*Center v. City of W. Carollton*, 227 F.Supp. 2d 863, 868 (S.D. Ohio 2002)...........16

*City of Canton v. Harris*, 489 U.S. 378, 389 (1988)................................................23

*County of Los Angeles v. Davis*, 440 U.S. 625, 625 (1979) .....................................28

*Crabbs v. Scott*, 786 F.3d 426, 428 (6th Cir. 2015)..............................................32

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)....................18

*Deck v. City of Toledo*, 76 F. Supp. 2d 816, 823 (N.D. Ohio 1999) .......................26

*Derezic v. Ohio Depot of Educ.*, 2014 U.S. Dist. LEXIS 118163, *9-10 (S.D. Ohio
2014) ................................................................................................................ 35, 36

*Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).....................34

*Dillary v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) .............................26

*Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, 2022 WL
3088240 (6th Cir. Aug. 3, 2022) .............................................................................7

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) ..........................38

*Edmunds v. Bd. of Control of E. Mich. Univ.*, 2009 U.S. Dist. LEXIS 119973, at *5
(E.D. Mich. 2009)..................................................................................................13

*EEOC v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013) ..........................................37

*Ermold v. Davis*, 936 F.3d 429, 433 (6th Cir. 2019) ..............................................32

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)..........................................................35

*Evan v. Robertson*, 2025 U.S. Dist. LEXIS 188954, *11 (E.D. Mich 2025) ..........11

*Ex parte Young*, 209 U.S. 123, 150-156 (1908) ................................................. 34, 35

*Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) ...............................................9

*Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) ...............................................7, 14

*Godfrey v. Hamilton Cty. Juv. Ct.*, S.D. Ohio No. 1:18-cv-663, 2019 U.S. Dist.
    LEXIS 119930 (Jul. 18, 2019) ...........................................................................33

*Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)............. 29, 30

*Gribble v. Misconin (In re Celebrezze),* 2012-Ohio-6304, ¶ 7................................24

*Groppi v. Leslie*, 404 U.S. 496, 502 (1972)................................................................9

*Hafer v. Melo*, 502 U.S. 21, 25-26 (1991) ...............................................................33

*Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)..................................9, 10

*Helminski v. Ayerst Labs.*, 766 F.2d 208, 213 (6th Cir.) ...........................................9

*Hoskins v. Hamilton County Juvenile Court,* 2019 U.S. Dist. LEXIS 135631, at *
    19 (S.D. Ohio 2019) ...........................................................................................33

*Hunter v. Hamilton County*, 2016 WL 11463840, at *8, 18 (S.D. Ohio 2016) ......33

*Hurston v. Butler Cty, Dep't of Jobs & Family Servs.*, 2005 U.S. Dist. LEXIS
    22111, at *8 (S.D. Ohio 2005) ...........................................................................14

*Jackson v. City of Cleveland*, 64 F.4th 736, 747 (6th Cir. 2023) .............................14

*Kennedy v. Omegagas & Oil, LLC*, 748 F. App'x 886, 891 (11th Cir. 2018) .........28

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)................................................33

*Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities,* 825
    F.2d 946, 949 (6th Cir. 1987) .............................................................................24

*Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) ...............8

*Lloyd v. Doherty*, 2018 U.S. App. LEXIS 33324, *13-14 (6th Cir. 2018)...............38

*Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)......................................................30

*McCauley v. Georgia*, 466 F. App'x 832, 836 (11th Cir. 2012).............................10

*McCauley v. Superior Court,* 2011 U.S. Dist. LEXIS 162375, *31-32 (N.D. GA
    2011) ....................................................................................................................18

*Mosqueda v. Family Dollar Stores of Mich., LLC,* 592 F. Supp. 3d 616 (E.D. Mich.
    2022) ....................................................................................................................27

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ..................31

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir.
    2007) ....................................................................................................................29

*Ohioans Against Corp. Bailouts, LLC v. LaRose*, 417 F. Supp. 3d 962, 975-76
    (S.D. Ohio 2019) .................................................................................................35

*Paulone v. City of Frederick,* 787 F.Supp. 2d 360 (D. Md. 2011) .........................13

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, (1984)..................35

*Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 812 (6th Cir. 2002) ..............................................................................................................31

*Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 813-14 (6th Cir. 2002)....................................................................................................9

*R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 924 (6th Cir. 2016) .............................................................................................................8, 23

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012) ..................................................................................................................6

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) ................................................................................................................23

*Santamaria v. Carrington Mortg. Servs.,* LLC, 2018 U.S. Dist. LEXIS 221003, *18 (M.D. FL 2018) ...............................................................................................18

*Shaffer v. City of Columbus*, 444 F. Supp. 3d 872, 880-881 (S.D. Ohio 2020) ......21

*Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 97-99 (D.D.C. 2007) ...28

*Smith v. Grady,* 960 F.Supp.2d 735, 752 (S.D. Ohio 2013) .....................................33

*Smith v. Kalamazoo Pub. Sch.,* 703 F. Supp. 3d 822, 828-829 (W.D. Mich 2023) 18

*Smith v. Loeb Bros. Realty, L.P.,* 2022 U.S. Dist. LEXIS 252252 (W.D. Tenn. July 1, 2022) .............................................................................................................26

*Swekel v. City of River Rouge*, 119 F.3d 1259, 1263 (6th Cir. 1997).......................10

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812-13 (6th Cir. 2020) ........14

*Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993).................34

*Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008) ........................................... 20, 21

*Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir. 1997)..........................8

*Updike v. Multnomah Cty.*, 870 F.3d 939 (9th Cir. 2017).........................................16

*Verizon MD. Inc. v. United States*, 535 U.S. 635, 646 (2001)................................34

*Warth v. Seldin*, 422 U.S. 490, 499 (1975)..............................................................29

*Ward v. City of Norwalk,* 640 Fed. Appx. 462, 464-465 (6th Cir. 2016)................33

*Winburn v. Howe*, 43 F. App'x 731, 734 (6th Cir. 2002) .......................................14

## Statutes

29 U.S.C. § 794....................................................................................................7

42 U.S.C. § 12132...............................................................................................7

42 U.S.C. § 12182(a) .........................................................................................28

42 U.S.C. § 1983 ...................................................................................... 1, 8, 32

O.R.C. 4112.02 ........................................................................................ 3, 8, 32

**Rules**

Fed. R. Civ. P. 12 .................................................................................................6

Ohio Rule of Superintendence 88(B).................................................................25

**Treatises**

ADA Technical Assistance Manual, Section II-3.6200...........................................25

**Regulations**

28 C.F.R. § 35.164 .............................................................................................15

28 C.F.R. part 35, App. A ............................................................................. 15, 16

28 C.F.R. § 35.160 .............................................................................................25

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendant-Appellee Judge Gregory Grimslid waives oral argument because the facts and legal arguments are not complicated and will be adequately presented in the briefs and record; this Court's decision would not be significantly aided by oral argument. However, should this Court deem oral argument necessary, Judge Gregory Grimslid would like to participate.

## STATEMENT OF ISSUES

1. The District Court Properly Determined Appellant Failed to State a Viable Claim under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. 1983, and O.R.C. 4112.02(G).

2. Dismissal of Appellant's Claims under 42 U.S.C. § 1983 and O.R.C. 4112.02(G) Should be Affirmed for Reasons Not Fully Addressed in the District Court's Order.

## STATEMENT OF THE CASE

*Pro se* Plaintiff-Appellant Knox ("Knox" or "Appellant") filed this action asserting violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and, under 42 U.S.C. § 1983, a violation of his Fourteenth Amendment due process rights, specifically his right to access to the courts (Complaint, RE 1, PageID#: 1-21). On June 26, 2026, Knox filed an Amended Complaint, naming Defendants-Appellees Judge Gregory Grimslid (in his official capacity), the Hardin County Municipal Court, Clerk of Courts Emily Kissling, and Prosecutor Andrew Tudor (Amended Complaint, RE 15, PageID#: 114-131). In addition to naming Judge Grimslid solely in his official capacity, Knox clarified in his Opposition to Judge Grimslid's Motion to Dismiss that he was only seeking prospective injunctive and declaratory relief against Judge Grimslid, and not monetary damages (RE 25, PageID#: 224).

Knox's claims stem from a traffic action in the Hardin County Municipal Court – Case No. TRD2501241 – over which Judge Grimslid initially presided (the "Underlying Case"). Knox alleges that on May 17, 2025, he was issued a traffic

1

citation for a window tint (RE 15, PageID#: 118, ¶ 14). A hearing was set for May 27, 2025, and on May 21, 2025, Knox, who is deaf, alleges he contacted the Hardin County Municipal Court (the "Municipal Court") by telephone using an American Sign Language (ASL) interpreter service and requested an ASL interpreter for his upcoming Court date (Id., ¶ 15). He was informed that the Municipal Court does not accept accommodation requests via phone and he could make the request in person (Id., ¶ 16). Knox felt this requirement infringed upon his rights under the ADA and contacted the Ohio Supreme Court Language Services Section to relay his concerns (Id., PageID#: 119, ¶ 17). Knox alleges that the representative he spoke with contacted the Court, who still refused to accept the request over the phone (Id.).

On May 27, 2025, Knox alleges he appeared for his hearing, and requested an ASL interpreter, which he was informed would happen in Court (Id., PageID#: 120, ¶ 18). During the hearing, Knox alleges a Court employee attempted to assist him with a phone-based app, but he was not appointed an official interpreter for the hearing (Id., ¶ 19). He then alleges he communicated with Judge Grimslid through the phone-based app, and that Judge Grimslid stated no interpreter had been arranged because this was a minor (traffic) matter (Id.). However, Judge Grimslid then continued the hearing and issued an order that an ASL interpreter would be appointed (Id.).

2

In the interim, Knox sent a "complaint" to the Municipal Court and the Hardin County Prosecutor's Office regarding the issue at the May 27th hearing (Id., PageID#: 121, ¶ 21). The "complaint" proposed a resolution to his issues, including a monetary settlement, a formal acknowledgement of the violation, ADA training for Municipal Court staff, and implementation of new ADA policies (Id.; Plaintiff's Exhibit K, RE 9-7, PageID#: 73-75). Knox alleges he received a response from Judge Grimslid stating the Judge had no response to the proposal (RE 15, PageID#: 121, ¶ 21). Judge Grimslid then recused himself from the matter (Id., ¶ 22).

Though not fully alleged in the Complaint, Knox's hearing was rescheduled for June 2, 2025, and the docket reflects he waived a defense and was issued a fine for his charge, ending the traffic proceedings subject to payment of the fine (RE 24-3, June 2, 2025 Entry, PageID# 208).

Knox's claims were based on the denial of the ASL interpreter at the May 27th hearing, and his disagreement with the Municipal Court's policies related to disability accommodation requests. Knox brought claims pursuant to the ADA, the Rehabilitation Act, 42 U.S.C. 1983, and O.R.C. 4112.02(G) for violations of civil rights related to a failure to accommodate his disability. Knox sought relief in the form of a declaratory judgment that his rights were violated, injunctive relief in the form of the Court revising its policies, compensatory damages, attorneys' fees, costs, and other equitable relief.

3

On July 25, 2025, Judge Grimslid filed a Motion to Dismiss the claim for the following reasons: (1) Knox failed to state a claim under the ADA and the Rehabilitation Act; (2) Knox's claims under the ADA and the Rehabilitation Act were moot; (3) Knox's claims under 42 U.S.C. § 1983 and O.R.C. § 4112.02(G) against Judge Grimslid in his official capacity were barred by Eleventh Amendment Sovereign Immunity; and (4) Judge Grimslid was entitled to absolute judicial immunity to the extent Knox brought claims against him in his personal capacity (RE 24, Motion to Dismiss, PageID#: 180-208). On July 31, 2025, Knox filed an Opposition to the Motion to Dismiss (RE 25, Opposition, PageID#: 209-237), and on August 10, 2025, Judge Grimslid filed a Reply in Support of the Motion to Dismiss (RE 30, PageID#: 291-303).

On January 12, 2026, the District Court entered a Memorandum Opinion and Order granting the Motion to Dismiss, holding that Knox failed to state a claim as to any of his causes of action , and finding that failure subjected his claims to dismissal, did not reach the merits of the immunity arguments (RE 3, Memorandum Opinion and Order, PageID#: 319-328). On February 10, 2026, Knox filed a timely Notice of Appeal (RE 35, Notice of Appeal, PageID#: 330-331).

## SUMMARY OF THE ARGUMENT

In this appeal, Knox challenges the District Court Order dismissing the claims against Judge Grimslid for failing to state a claim upon which relief may be granted.

4

Specifically, the District Court determined that Knox's allegations did not support that he was denied the right to the Municipal Court's services and that Knox was provided the accommodation he requested.

In this appeal, Knox does little to address the undisputed fact that he was provided with his requested accommodation prior to any meaningful events in his case. Instead, Knox focuses on tangential aspects of the analysis, such as whether Judge Grimslid gave primary consideration to his requested accommodation or whether Judge Grimslid acted with deliberate indifference, which are irrelevant when he was afforded the exact accommodation he requested. Likewise, Knox continues to focus on the Municipal Court's ADA policies, or the alleged lack thereof, which cannot support a claim for a violation of the ADA or the Rehabilitation Act.

Even though the District Court's dismissal was proper for the reasons set forth in the Memorandum Opinion and Order, Judge Grimslid is also entitled to Sovereign Immunity under the Eleventh Amendment, and Knox's allegations do not support an exception to that immunity under *Ex parte Young*. Finally, although Knox clarified in the District Court that he was only suing Judge Grimslid in his official capacity, to the extent any individual capacity claims exist, Judge Grimslid is entitled to absolute judicial immunity.

Accordingly, the District Court appropriately dismissed Knox's claims, and

that decision should be upheld.

## ARGUMENT

### I.    Standard of Review

This Court reviews a district court's dismissal of a Complaint under Fed. R. Civ. P. 12(b)(6) *de novo*. *Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239, 246 (6th Cir. 2012).

To survive a motion to dismiss, the appellant must have alleged facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### II.    *The District Court Properly Determined Appellant Failed to State a Viable Claim pursuant to Civ. R. 12(b)(6) under the ADA, the Rehabilitation Act, 42 U.S.C. § 1983, and O.R.C. 4112.02(G).*

**A. The District Court properly determined that Knox was not denied meaningful access to the benefits of the Hardin County Municipal Court's services, programs, or activities, or that he was denied access to the courts.**

Knox's Amended Complaint identified Judge Grimslid in his official capacity (RE 15, PageID#: 116, ¶ 6). Title II of the ADA states that "[n]o qualified individual

6

with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132.  The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

In order to prove a public program or service violates Title II of the ADA, a plaintiff must show: "(1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008)); 42 U.S.C. § 12132. The Sixth Circuit evaluates ADA and Rehabilitation Act claims similarly, *see Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000), with one caveat. *See Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, 2022 WL 3088240 (6th Cir. Aug. 3, 2022). The ADA and Rehabilitation Act have slightly different causation standards: the ADA requires that discrimination occur "because of" a plaintiff's disability, and the Rehabilitation Act requires that it occur "solely by reason of" a plaintiff's disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315

7

(6th Cir. 2012) (en banc). Despite this one difference, courts frequently analyze together claims brought under the two respective statutes. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) ("The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both."); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 924 (6th Cir. 2016) ("[T]he ADA and Rehabilitation Act cover largely the same ground.").

Further, the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular. *See id.* at 568 ("[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular.") (citing *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir. 1997)). If the plaintiff meets these requirements, then the burden shifts to the defendant to show that the accommodation provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden. *See e.g., Tennessee v. Lane,* 541 U.S. 509, 532 (2004).

Likewise, Knox's claims under 42 U.S.C. § 1983 and O.R.C. § 4112.02(G) are, in essence based upon violations Due Process Clause of the Fourteenth

8

Amendment, specifically the right of access to the courts.[1] For criminal defendants like Knox, the Due Process Clause has been interpreted to provide that "an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). Parties in civil litigation have an analogous due process right to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests. *See, Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 813-14 (6th Cir. 2002); *Helminski v. Ayerst Labs.*, 766 F.2d 208, 213 (6th Cir.), *cert. denied*, 474 U.S. 981, 88 L. Ed. 2d 339, 106 S. Ct. 386 (1985). Further, those who fail to appear in court may not be sanctioned for failing to appear until they have been accorded due process. *Groppi v. Leslie*, 404 U.S. 496, 502 (1972).

In the context of access to the courts, a party "must show actual injury" or prejudice to their underlying case when stating a claim for interference with access to the courts. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). If the obstructive action occurs before the plaintiff can file their claim, they "must establish

---

[1] As set forth below in Section IV.A, although the District Court did not reach the merits of the immunity defenses raised in the Motion to Dismiss, because Judge Grimslid was only named in his official capacity, Knox's claims under 42 U.S.C. § 1983 and O.R.C. § 4112.02(G) are barred by Eleventh Amendment Sovereign Immunity.

that such abuse denied [them] 'effective' and 'meaningful' access to the courts." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263 (6th Cir. 1997) (quoting *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)). A plaintiff can do so by showing that the defendant's actions prevented plaintiff "from filing suit in state court or rendered ineffective any state court remedy [plaintiff] previously may have had." *Id.* at 1263-64. The Sixth Circuit has identified "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline" as some examples of actual prejudice to pending or contemplated litigation. *Harbin-Bey*, 420 F.3d at 57; see also, *McCauley v. Georgia*, 466 F. App'x 832, 836 (11th Cir. 2012) (To allege denial of the right to access the courts under Title II of the ADA, "a plaintiff must show actual injury by demonstrating that her efforts to pursue a nonfrivolous claim were frustrated or impeded by an official's action.").

Despite Knox's allegations, the record from the Underlying Case demonstrates conclusively that Knox was not excluded from participation in, nor was he denied the benefits of, the Municipal Court's services, programs, or activities, and was therefore not denied access to the courts. Instead, after considering Knox's request for an ASL interpreter, Judge Grimslid continued the matter so that an interpreter could be appointed. Given those pleaded facts, the District Court properly concluded that Knox was not denied meaningful participation in the adjudication of

10

his citation, because the adjudication occurred at the June 2 hearing with the requested interpreter (Order, RE 33, PageID#: 325-326).

In this appeal, Knox argues that the District Court did not fully analyze whether he suffered a "concrete injury" in the Underlying Case. Specifically, he alleges that Judge Grimslid's act of continuing the hearing from May 27 to June 2 for purposes of appointing an ASL interpreter, and that this denied him meaningful access to the Municipal Court.

Knox cites to *Bahl v. County of Ramsay,* 695 F.3d 778 (8th Cir. 2012) for its alleged holding that, "The violation was complete when [Bahl] was denied an interpreter…Subsequent accommodation does not erase that violation." Appellant's Brief, Doc. 9, p. 48. However, a review of the *Bahl* case reveals that no such holding or statement appears in that decision. Indeed, *Bahl* contains no discussion of "subsequent accommodations" at all.

While *pro se* litigants are afforded some leniency, "a *pro se* litigant must not provide the Court with erroneous and factitious citations and has an obligation to review documents filed with the Court to make certain they are scrupulously accurate." *Evan v. Robertson*, 2025 U.S. Dist. LEXIS 188954, *11 (E.D. Mich 2025) (internal citations omitted). Judge Grimslid is hesitant to speculate on the reason for this inaccurate citation, but the fact remains that *Bahl* does not stand for this proposition, and should be disregarded as it pertains to Knox's argument.

11

Notwithstanding, *Bahl* is instructive in this case, albeit not in Knox's favor. In *Bahl*, the plaintiff was arrested after a routine traffic stop that resulted in the plaintiff fighting the police officers. An investigator subsequently began the process of a post-arrest interview, where the plaintiff, Bahl, requested an ALS interpreter and the investigator said he would look for one after Bahl signed a Miranda rights waiver. *Bahl* at 788. The investigator then stopped the interview after considering the costs of an interpreter and the fact he "had all the elements" necessary to charge Bahl with a crime. *Id.* The Eighth Circuit reversed dismissal of Bahl's claims under these facts, as he was never provided a post-arrest interview after the investigator stopped it due to Bahl's disability, and the interview would have provided Bahl, "certain benefits, including the right to ask questions and tell his side of the story, which arguably could have affected the charging decision." *Id.*

This holding in *Bahl* is distinguishable from the case at hand, where no decisions were made prior to the appointing of an interpreter, and Knox was not precluded from the benefits of the Municipal Court's services, including the ability to tell his side of the story or present a defense, regardless of the fact that he ultimately waived a defense. Had Judge Grimslid outright denied Knox an ALS Interpreter on May 27 and proceeded in making determinations in that case, *Bahl* would perhaps be analogous, but no matter how hard Knox seeks to downplay what

12

actually happened, he was not denied an interpreter or the Municipal Court's services.

Likewise, in *Paulone v. City of Frederick,* 787 F.Supp. 2d 360 (D. Md. 2011), also cited by Knox in the District Court, the plaintiff was not provided an ASL interpreter at an initial appearance after an arrest for suspicion of driving while intoxicated. 787 F.Supp. 2d at 364-365. At that hearing, a district court commissioner determined whether there was probable cause for the defendant's arrest, advised the defendant of various constitutional rights and procedural requirements, and determined whether the defendant would be released pretrial (and, if so, the amount of any bond). *Id*. As that hearing involved clearly established liberty rights, including whether the plaintiff would remain incarcerated, the plaintiff was able to establish a violation of her rights. *Id*.

Here, the only concrete injury Knox identifies as interfering with his meaningful access to the Municipal Court was the order of continuance. "Although a delay in granting a reasonable accommodation may support a disability discrimination claim, the delay must be unreasonable for it to be actionable." *Edmunds v. Bd. of Control of E. Mich. Univ.*, 2009 U.S. Dist. LEXIS 119973, at *5 (E.D. Mich. 2009). "In analyzing the delay, courts 'consider the length of the delay, the reasons for the delay, whether the [program] has offered any alternative accommodations while evaluating a particular request, and whether the

[program] has acted in good faith.'" *Id.* (quoting *Hurston v. Butler Cty, Dep't of Jobs & Family Servs.*, 2005 U.S. Dist. LEXIS 22111, at *8 (S.D. Ohio 2005))

In *Finley v. Huss,* 102 F.4th 789, 822 (6th Cir. 2024) this court analyzed a delayed accommodation request in a prison that was ultimately granted, and stated, "we decline to endorse such a theory where delays are merely the result of internal processing issues or matters outside the entity's control—at least when such delays are of modest length." *Id.* at 822, citing *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812-13 (6th Cir. 2020); *Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005). This Court has also suggested, "that delay *alone* does not substantially prejudice an underlying claim." *Jackson v. City of Cleveland*, 64 F.4th 736, 747 (6th Cir. 2023), citing *Winburn v. Howe*, 43 F. App'x 731, 734 (6th Cir. 2002).

As Knox alleged, on May 27 he was informed that the Municipal Court does not have an interpreter on site, and that one would be appointed during the court session (Am. Complt., RE 15, PageID#: 119-120, ¶ 18). This internal processing procedure and brief delay of seven (7) days simply cannot support a claim he was denied the benefits, services, programs or access to the Municipal Court, particularly when no substantive proceedings in his case occurred without his requested accommodation. As the District Court found, "[Knox] does not dispute he was afforded the specific accommodation he requested when all substantive proceedings

in his case took place." Memorandum Opinion and Order, RE 33, PageID#: 326. And as set forth, *infra*, Knox's allegations about the Municipal Court's ADA policies, or alleged lack thereof, do not support a claim.

Accordingly, Knox cannot establish the second prong of the ADA and Rehabilitation Act analysis, that that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; was otherwise discriminated against by the public entity; or that he was denied access to the access to the courts under the Fourteenth Amendment. This alone supports that the District Court was correct in its determination, and that this Court should affirm dismissal of his Amended Complaint.

**B. The District Court properly determined that Judge Grimslid did give primary consideration to Knox's accommodation request, and even if he did not, Knox did not allege that the alternative auxiliary aids were ineffective.**

The Justice Department's commentary on the regulations regarding the ADA further states that a public entity "shall honor the choice" of auxiliary aid or service expressed by the person with disabilities, "unless it can demonstrate that another effective means of communication exists or that use of the means chosen" would fundamentally alter the program, service, or activity of the public entity at issue, or would create an undue financial or administrative burden. 28 C.F.R. part 35, App. A; *see also* 28 C.F.R. § 35.164 (standard of fundamental alteration or undue financial or administrative burden).

15

Of import here, the commentary also states:

> Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

*Center v. City of W. Carollton*, 227 F.Supp. 2d 863, 868 (S.D. Ohio 2002), citing 28 C.F.R. part 35, App. A.

Knox cites to *Updike v. Multnomah Cty.*, 870 F.3d 939 (9th Cir. 2017) for his argument that the Judge Grimslid did not give "primary consideration" to his request for an ASL interpreter. In *Updike*, the plaintiff was detained in a County Jail and during his detention, he requested ASL interpreters, TTY devices, and other accommodations, which were repeatedly denied. The *Updike* court further noted that, "[i]f the public entity does not defer to the deaf individual's request, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required." *Id.,* at 958, citing 28 C.F.R. pt. 35, App. A.

But an analysis of whether Knox's requested auxiliary aid would have placed an undue burden on the Municipal Court is unnecessary in this instance because it is undisputed from the record in the Underlying Case that Judge Grimslid did order an ASL interpreter be provided, which was the *exact* auxiliary aid or service requested

16

by Knox. To the extent that other auxiliary aids were utilized during Knox's first appearance on May 27, 2025, the commentary to the regulations does not prohibit such means, particularly in this instance where Judge Grimslid did not make any findings as to the violations against Knox and did not address any substantive matters during that first appearance, and Knox was not denied *meaningful* participation in the proceedings.

Knox's argument in this regard strains credulity because he does not dispute that Judge Grimslid granted him his requested accommodation. However, Knox chooses to ignore this undisputed fact, and instead focuses on the events of the May 27, 2025, Hearing, and cites to several allegations in his First Amended Complaint he argues support his contention that the auxiliary aids on May 27 were not effective, including:

- Court staff displayed "visible hostility" and told him to "read her lips" RE 15, PageID# 120, ¶ 18;

- The clerk responded with "clear irritation, and aggressive tone, and open disdain" Id.;

- The court employee using a phone-based not application "was not a certified interpreter and was not equipped to facilitate effective, legally compliant communication." Id, ¶ 19; and

- He was "excluded from meaningful participation." Id., PageID# 114, ¶ 1.

But what is missing from Knox's allegations is any reference to not being able to <u>understand</u> the proceedings. Knox's allegations about how the Municipal Court staff responded to him also fail to demonstrate that he was denied the benefits,

17

programs, services of the Municipal Court, or access to same. *See, e.g. McCauley v. Superior Court,* 2011 U.S. Dist. LEXIS 162375, *31-32 (N.D. GA 2011) ("Although Plaintiff may have found it frustrating interacting with untrained staff who were insensitive and did not understand her disability, the allegations in the complaint and Judge Self's orders do not demonstrate that she was denied access to the courts without this accommodation of trained staff."); *Santamaria v. Carrington Mortg. Servs.,* LLC, 2018 U.S. Dist. LEXIS 221003, *18 (M.D. FL 2018) ("The wrongful actions that Plaintiff describes -- indifference and mockery — may be signs of a moral deficiency, but don't rise to the level of a cognizable legal claim" under the ADA).[2]

Continuing to focus solely on the events of May 27, Knox then cites to *Center v. City of W. Carrollton*, 227 F.Supp. 2d 863 (S.D. Ohio 2002), to argue that the trial court improperly resolved a question of fact as to the effectiveness of the auxiliary aids during the May 27 Hearing. In *Center*, the plaintiff was deaf and requested an

---

[2] In fact, the Supreme Court has affirmatively held that emotional distress damages are not recoverable in a private action to enforce Section 504 of the Rehabilitation Act. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (emotional distress damages). In turn, courts within this Circuit have extended that holding to find that damages for mental anguish and emotional distress are not recoverable in actions brought under Title II of the ADA. *Smith v. Kalamazoo Pub. Sch.,* 703 F. Supp. 3d 822, 828-829 (W.D. Mich 2023).

ASL interpreter for purposes of reporting a crime to the police. *Id.,* at 867. The plaintiff presented evidence that she requested the interpreter when the police officer arrived and that she was not proficient in written English; however, the officer's affidavit disputed that she requested the interpreter and that handwritten notes had been effective in communicating with the plaintiff. *Id.*, at 868-869. Thus, the court found there was a question of fact given the differing testimony on the situation and the reasonableness of the auxiliary aid during the reporting of the crime.

There is a clear distinction between the instant case and *Center*, a distinction that undercuts many of his arguments: Knox was <u>not</u> denied an interpreter during the meaningful aspects of the Underlying Case. This stands in contrast to *Center*, where there was a dispute about the effectiveness of the auxiliary aid during the operative provision of the public services; the reporting of the crime. *Id.* Further distinguishing *Center*, Judge Grimslid does not dispute that Knox made an accommodation request.

Here, Knox's characterization that the aids were "ineffective" is simply a legal conclusion that a court need not accept as true, particularly when there are no facts alleged that Knox did not understand the May 27 proceedings. Even considering Knox's conclusory allegation that the auxiliary aids during the May 27 Hearing were ineffective, because no substantive action was taken on his case during that hearing,

19

he cannot support a claim he was denied *meaningful* access to the Municipal Court, its services, programs, or activities. Additionally,

For example, the court in *Assi v. Hanshaw,* 625 F. Supp. 3d 722 (S.D. Ohio 2022), addressed the analysis of "effective means of communication" in the context of an Title II ADA claim at the pleading stage. In *Assi*, the plaintiff was detained in the Lawrence County, Ohio Jail for approximately three weeks. Upon arrival, the plaintiff requested to use a Text Telephone (TTY phone) to communicate with individuals outside the jail, but this request was denied because the jail did not have such a device. *Id.* at *733-734. The Southern District of Ohio dismissed the plaintiff's failure to accommodate claim under the ADA because although the plaintiff was not provided the specific accommodation requested, the plaintiff did not allege they did not understand the alternative forms of communication used, and therefore did not establish they were denied "meaningful access" to the jail's programs. *Id.*

The *Assi* court relied on this Court's decision in *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008), where two of the plaintiffs were deaf and mute, and were arrested for various charges. *Id.* at 528-530. Amongst a variety of claims, the plaintiffs brought claims under the ADA and the Rehabilitation Act for the failure to provide an interpreter at their initial hearing. *Id*. at 540. In the underlying proceedings, the presiding judge offered to continue the matter so an interpreter could be appointed,

but the right to an interpreter was waived, and one of the plaintiffs entered a guilty plea by writing on a form provided by the court. *Id.* The plaintiffs later brought the claims for a lack of an interpreter, but the Sixth Circuit affirmed dismissal of these claims based upon the plaintiffs' waiver of the right, as well as the fact the plaintiffs failed to prove there was any confusion as to what was happening during the court proceedings. *Id.* at 541. The Sixth Circuit further stated that the ADA does not require a public entity to meet a disabled person's exact requests, but "[w]hat is required by the ADA […] is an alternative which allows disabled persons to communicate as effectively as a non-disabled person." *Id.* Indeed, the ADA and its regulations "do not give a deaf individual an absolute right to an interpreter," and Knox identifies no support for the idea that such a right exists. *Shaffer v. City of Columbus*, 444 F. Supp. 3d 872, 880-881 (S.D. Ohio 2020)

The same holds true here, where Knox did not allege there was any confusion in the May 27 proceedings or that he did not understand the proceedings other than the conclusory allegations the means of communication were ineffective and, in contrast to *Tucker*, no actual decisions or actions affecting his rights occurred during the initial hearing. In his Amended Complaint, Knox alleged he communicated with Judge Grimslid during the initial hearing through a phone-based note application but does not indicate he was unable to understand the communication, or the rights expressed to him through that communication (Am. Compl., RE 15, PageID#: 120,

21

¶ 19). Moreover, the judge in *Tucker* offered to continue the case so an interpreter could be provided, and nothing in the decision indicates that would have resulted in a due process violation, even when it would have resulted in the plaintiffs in *Tucker* remaining in jail longer, which is not the case for Knox, who merely appeared pursuant to a citation without incarceration.

Accordingly, even though effectiveness of an accommodation can be fact-intensive in some cases, Knox's own allegations plead that Judge Grimslid did not force him to proceed to a merits disposition on May 27 without an interpreter; the judge continued the matter and then provided the interpreter prior to any findings, plea, or fine. That undisputed sequence distinguishes this case from scenarios where a plaintiff is required to litigate, plead, or be sentenced without effective communication. Knox was not deprived of any property or other due process interest at the May 27 hearing nor was he denied his right to be present at any *meaningful* stage of the proceedings as an ASL interpreter *was* appointed for him.

**C. The deliberate indifference standard is inapplicable to Knox's claims for injunctive and declaratory relief and, notwithstanding, Knox's allegations fail to support that Judge Grimslid acted with deliberate indifference.**

Knox then argues that the District Court failed to conduct a "deliberate indifference" analysis in determining whether Judge Grimslid violated the ADA or the Rehabilitation Act. But, Knox stated in the underlying proceedings that he was not seeking compensatory damages against Judge Grimslid, only injunctive and

declaratory relief. As this Court has held, the deliberate indifference standard only comes into play when a plaintiff must demonstrate intentional discrimination for the purposes of compensatory damages. *R.K. v. Bd. of Educ.*, 637 Fed. Appx. 922, 925 (6th Cir. 2008) ("to obtain money damages under the ADA and the Rehabilitation Act, [plaintiff] must show that the school board acted with 'deliberate indifference' towards his federally-protected rights."). Because Knox does not seek compensatory damages against Judge Grimslid, and because the District Court did not find that Knox stated a claim under the ADA or the Rehabilitation Act, it did not need to conduct a deliberate indifference analysis as to Judge Grimslid.

Even if such an analysis had been necessary or appropriate, Knox's allegations do not support that Judge Grimslid acted with deliberate indifference. The "deliberate-indifference standard 'require[es] both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.'" *R.K.*, 637 F. App'x at 926 (Moore, J., concurring in part and dissenting in part) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)); *see also, Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

Knox cannot demonstrate deliberate indifference because the second element has not been met; *a failure to act* upon a substantial likelihood of harm to a federally protected right. The federally protected right at issue here is the denial of meaningful

23

access to the courts. As set forth above, Knox was not denied meaningful access to the Courts as no substantive issues were addressed at the May 27 hearing, and instead the matter was continued to an interpreter could be appointed. Judge Grimslid clearly *acted* on the interpreter request, and as Knox acknowledged an interpreter was appointed, there are no set of facts he could prove that would support Judge Grimslid failed to act.

Likewise, Knox's allegation that Judge Grimslid recused himself from the Underlying Case after receiving a complaint from Knox does not demonstrate the judge acted improperly, with deliberate indifference, or otherwise acknowledged culpability. For example, the Ohio Supreme Court has held "it is well established that a judge's voluntary removal from an earlier case does not, by itself, support disqualification from an unrelated case involving that same party or attorney." *Gribble v. Misconin (In re Celebrezze),* 2012-Ohio-6304, ¶ 7. As this Court has held, "the mere fact of recusal does not mean that the recusing judge had concluded that his recusal was mandatory." *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities,* 825 F.2d 946, 949 (6th Cir. 1987).

Therefore, even if the deliberate indifference standard were at play, Knox did not allege sufficient facts supporting a conclusion that Judge Grimslid acted with deliberate indifference, and dismissal was appropriate.

24

**D. Knox's argument that the Municipal Court's procedures created a "Catch-22" scenario does not support his claim.**

Knox also argues that the Municipal Court and Judge Grimslid's procedures for requesting an accommodation create a "catch-22" scenario for litigants and that this further supports his claim. While he contends that Judge Grimslid and the Municipal Court should be required to accept accommodation requests over the phone, he cites no authority demonstrating that the ADA, the Rehabilitation Act, or the regulations surrounding these acts strictly require such a procedure.[3] Neither 28 CFR § 35.160 nor the ADA Technical Assistance Manual, which Knox cited in the District Court in support of his allegations that accommodation requests be allowed over the phone or email, actually states that such services are required, and instead speak only to the auxiliary services required, not the means those services are requested.[4]

---

[3] Likewise, Ohio Rule of Superintendence 88(B) only requires a sign language interpreter be appointed upon request and that a court should give primary consideration to the method of interpretation requested by the party, but does not prescribe how the court must accept the request.

[4] ADA Technical Assistance Manual, Section II-3.6200 states: "A public entity is not required to provide individuals with disabilities with personal or individually prescribed devices, such as wheelchairs, prescription eyeglasses, or hearing aids, or to provide services of a personal nature, such as assistance in eating, toileting, or dressing. Of course, if personal services or devices are customarily provided to the individuals served by a public entity, such as a hospital or nursing home, then these personal services should also be provided to individuals with disabilities."

As Knox was provided with the auxiliary service he requested, his allegations that Judge Grimslid and the Municipal Court lacked ADA policies or training he believes should be in place do not support a claim for violation of the ADA. See, *Deck v. City of Toledo*, 76 F. Supp. 2d 816, 823 (N.D. Ohio 1999) ("Plaintiffs have presented nothing that would indicate to this Court that . . . failure to have policies and procedures designed to ensure compliance with the ADA could constitute a violation of ADA for which they are entitled to redress."); *Smith v. Loeb Bros. Realty, L.P.,* 2022 U.S. Dist. LEXIS 252252 (W.D. Tenn. July 1, 2022) ("Plaintiff's reliance on the absence of an ADA compliance policy offered by Defendant is insufficient" to support a claim under the ADA); *Bowie v. Hamilton Cty. Juvenile Court,* 2021 U.S. App. LEXIS 1581, *7 (6th Cir. 2021) ("[Plaintiff-Appellant] cannot bring a claim under Title II of the ADA simply because the Juvenile Court lacked a designated coordinator or a grievance procedure."); *Dillary v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (Allegations defendants failed to train its employees about the ADA affects all disabled persons, and does not support that the defendant intentionally discriminated against the plaintiff specifically by failing to undertake these actions).

Accordingly, this argument is without merit and does not compel reversal of the District Court's dismissal.

### III.   Knox's Claims under the ADA and the Rehabilitation Act are Moot.

Even if the initial response from Judge Grimslid and/or the Municipal Court preceding and during the May 27 Hearing could be viewed as a violation of the ADA or the Rehabilitation Act, as Judge Grimslid remedied the alleged violation by appointing an interpreter, Knox's claims are moot. "To uphold the constitutional requirement that federal courts hear only active cases or controversies, as required by Article III, section 2 of the federal constitution, a plaintiff must have a personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness)." *Barry v. Lyon*, 834 F.3d 706, 2016 U.S. App. LEXIS 15671, at *4 (6th Cir. 2016) (internal citations omitted). "Standing is a threshold question in every federal case." *Id.* "Plaintiffs have standing if they suffer a 'concrete,' 'particularized,' and 'actual' or 'imminent' injury that is caused by a defendant's conduct and is likely to be 'redressed by a favorable decision." *Id.* "If the plaintiff ceases to have standing such that a live case or controversy no longer exists, the case becomes moot." *Id.*, at *5.

ADA Title II claims, and by extension the analogous Rehabilitation Act claims, are moot when a "defendant has presented evidence that it remediated the ADA violations identified in the complaint." *Mosqueda v. Family Dollar Stores of Mich., LLC,* 592 F. Supp. 3d 616 (E.D. Mich. 2022); See also, *Dowling v. Macmarin, Inc*., 156 F.3d 1236, 1236 & n.1 (9th Cir. 1998) (holding that being "fully

in compliance with the ADA" due to "recent renovations" renders an ADA claim moot); *Kennedy v. Omegagas & Oil, LLC*, 748 F. App'x 886, 891 (11th Cir. 2018) (unpublished) (per curiam) (holding that a defendant's remediation of an ADA violation renders the plaintiff's "complaint as to th[e] noncomplaint features moot"); *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858, 858 (D. Minn. 2019) (citing ADA § 302, 42 U.S.C. § 12182(a)); *Bacon v. Walgreen Co.,* 91 F. Supp. 3d 446, 451-53 (E.D.N.Y. 2015); *Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 97-99 (D.D.C. 2007).

Here, Judge Grimslid remediated the alleged ADA violation at issue, the failure to appoint an interpreter, by appointing an interpreter; further, Knox ultimately waived his defense and was issued a fine. As such, Knox no longer has an interest in the outcome of these proceedings. *See, County of Los Angeles v. Davis*, 440 U.S. 625, 625 (1979) ("[B]ecause neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law," Plaintiff's ADA claim is moot).

Furthermore, voluntary cessation by government officials is generally accorded more weight in determining whether a claim is moot. *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003). Judge Grimslid continued the matter for appointment of an ASL interpreter *prior* to any litigation being commenced, and prior to when Knox sent his "Complaint" to the judge and other officials. Contrast

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007), where such remedial action "only appears to have occurred in response to the present litigation, which shows a greater likelihood that it could be resumed."

Accordingly, as the alleged violation was immediately remedied, Knox cannot establish he was denied meaningful access to the courts, and he states he is not seeking compensatory damages from Judge Grimslid, the only remaining issue is whether his claims for declaratory or injunctive relief are also moot.

In this regard, Knox argued in the District Court he is a member of "protected class" likely to be subject to future proceedings and that there are "multiple Deaf residents in Hardin County who rely on the court's compliance with the ADA to ensure meaningful access to public proceedings" (Opposition, RE 25, PageID#: 216). First, To the extent that Knox seeks injunctive relief on behalf of others, it is well settled that he lacks standing to do so. *See, Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.").

Second, to establish individual standing, a plaintiff has the burden of proving that they have suffered "injury in fact." *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012). Particularly relevant, in cases dealing with declaratory and injunctive relief, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement

29

review." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001).

Further, the Supreme Court has noted, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). To be sure, past wrongs might be "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* However, "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell*, 252 F.3d at 833 (citing *Lyons*, 461 U.S. at 109). By way of example, in *Lyons*, the plaintiff sought to enjoin the Los Angeles Police Department ("L.A.P.D.") from using a chokehold during arrests that had caused several deaths. *Lyons*, 461 U.S. at 97-98. The Supreme Court, recognizing that the L.A.P.D. had previously used a chokehold against the plaintiff, held that the future threat of injury was still too speculative to confer standing for injunctive relief. The Court explained:

> That Lyons may have been illegally choked by the police . . . while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation . . . .

*Id.* at 105.

Given the precedent on this point, Knox's attempt to establish entitlement to relief based on past exposure to an alleged wrong does not establish the requisite

30

injury in fact to permit him to seek declaratory and injunctive relief requiring Judge Grimslid to establish ADA related policies. Knox fails to show that *he* is subject to "actual present harm or a significant possibility of future harm"— a necessary element to seek declaratory and injunctive relief. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). As with the plaintiff in *Lyons*, the threat of Knox's future injury is purely conjectural, resting on a string of actions the occurrence of which is speculative.

Knox's argument regarding other individuals in his "protected class" also sounds in equal protection, and the Sixth Circuit has held that claims under the ADA and Rehabilitation Act sounding in equal protection are precluded against arms of the state by virtue of Eleventh Amendment sovereign immunity. *See, Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 812 (6th Cir. 2002) (finding that under Title II of the ADA, sovereign immunity is not abrogated for claims based solely on equal protection guarantees). As set forth below in Section IV.A, Judge Grimslid in his official capacity as a judge of the Hardin County Municipal Court is an arm of the state entitled to sovereign immunity and, again, Knox lacks standing to pursue the injunctive relief he seeks which would entitle him to the *Ex parte Young* exception to that immunity. Knox's individual due process claims under the ADA and Rehabilitation Act may not be precluded due to sovereign immunity, but his recharacterization of the injunctive relief he seeks as being

31

pursued on behalf of a protected class is an equal protection claim that cannot proceed.

Because Knox was appointed an interpreter, his case has been resolved, and there is no clear indication that Knox, individually, is likely to suffer the same harm in the future, his claims are moot and the District Court's decision should be affirmed.

**IV.    Dismissal of the Appellant's Claim Against Judge Grimslid Under 42 U.S.C. § 1983 Should be Affirmed for a Reason Not Fully Addressed in the District Court's Order.**

**A.  Judge Grimslid has sovereign immunity for Knox's official capacity claim pled against him.**

Although the District Court did not reach of the merits of this issue, Judge Grimslid is also entitled to sovereign immunity under the Eleventh Amendment for Knox's claim arising under 42 U.S.C. § 1983 and O.R.C. § 4112.02(G). Knox's Amended Complaint purports to bring claims against Judge Grimslid in his official capacity, which means they are claims against the entity Judge Grimslid represents—the Municipal Court. As set forth below, the Hardin County Municipal Court is an arm of the State; therefore, the claims against Judge Grimslid in his official capacity are precluded by sovereign immunity.

Unless a State consents to be sued, it enjoys immunity from private lawsuits seeking damages. *Ermold v. Davis*, 936 F.3d 429, 433 (6th Cir. 2019), citing U.S.

32

Const. amend. XI; *Crabbs v. Scott*, 786 F.3d 426, 428 (6th Cir. 2015). And because lawsuits against state officials in their official capacities equate to lawsuits against the State itself, sovereign immunity shields state officials as well. *Id.*, citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Ohio law consistently treats an official capacity claim by or against an official of an Ohio court as a suit against the State—not by or against the court he or she serves. See, *Ward v. City of Norwalk,* 640 Fed. Appx. 462, 464-465 (6th Cir. 2016); *Hoskins v. Hamilton County Juvenile Court,* 2019 U.S. Dist. LEXIS 135631, at * 19 (S.D. Ohio 2019) (finding an official capacity claim against a Juvenile Court judge in his official capacity is a claim against the State, meriting sovereign immunity when raised in federal court); *see also Godfrey v. Hamilton Cty. Juv. Ct.*, S.D. Ohio No. 1:18-cv-663, 2019 U.S. Dist. LEXIS 119930 (Jul. 18, 2019)(Juvenile Court judge being sued in his official capacity is protected by sovereign immunity); *Hunter v. Hamilton County*, 2016 WL 11463840, at *8, 18 (S.D. Ohio 2016) (Report and Recommendation)("[A] suit against Judge Myers in her official capacity is a suit against the state of Ohio.")*, adopted* at 2016 U.S. Dist. LEXIS 125621, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016)(*citing Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Smith v. Grady,* 960 F.Supp.2d 735, 752 (S.D. Ohio 2013). The same holds true for Knox's claims for declaratory relief, as the Eleventh Amendment generally "bars all suits, whether for injunctive, declaratory or monetary relief, against the

state and its departments." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). And, as set forth below, Knox's claims for injunctive relief do not satisfy the *Ex parte Young* exception to immunity.

Knox's 42 U.S.C. § 1983 and O.R.C. 4112.02(G) claims against Judge Grimslid, in his official capacity, are claims against an arm of the State of Ohio—the Hardin County Municipal Court—which is the same as a claim against the State itself; therefore, Judge Grimslid is entitled to sovereign immunity, and these claims against him must be dismissed.

### i. The *Ex parte Young* exception to sovereign immunity does not apply to Knox's claims for injunctive relief.

In *Ex parte Young*, the United States Supreme Court held that the Eleventh Amendment did not bar a suit alleged against a state official, in his official capacity, for prospective injunctive relief, thereby carving out a narrow exception to sovereign immunity. *Ex parte Young*, 209 U.S. 123, 150-156 (1908). In order for this exception to apply, a plaintiff's claim must "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Claims seeking retroactive, monetary relief are barred by the Eleventh Amendment and not subject to the *Ex parte Young* exception. *Id.*

To evaluate whether the *Ex parte Young* doctrine applies, the Court need only look to the allegations in the complaint, not the merits of the claim. *Bedford v. Kasich*, 2011 U.S. Dist. LEXIS 51903 at *24 (S.D. Ohio 2011) (citing *Verizon MD.*

34

*Inc. v. United States*, 535 U.S. 635, 646 (2001)). Courts have justified the *Ex parte Young* exception as a necessary means "to permit the federal courts to vindicate *federal* rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, (1984) (emphasis added) (quoting *Ex parte Young*, 209 U.S. 123). Thus, when no *federal* interests are implicated, "the entire basis for the doctrine of *Young*…disappears." *Id.* at 106 (holding the *Ex parte Young* exception did not apply to claims "against state officials on the basis of state law").

Consequently, all claims involving a state official's non-compliance with state law, whether retrospective or prospective, are barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 106; *see also Ohioans Against Corp. Bailouts, LLC v. LaRose*, 417 F. Supp. 3d 962, 975-76 (S.D. Ohio 2019) ("A claim that a state official violates state law in carrying out his or her official duties is a claim against the state, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter."); *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ("[B]ecause the purposes of Ex parte Young do not apply to a lawsuit designed to bring a State into compliance with state law, the State's constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature."); *see also, Derezic v. Ohio Depot of Educ.*, 2014 U.S. Dist. LEXIS 118163, *9-10 (S.D. Ohio 2014). Thus, Knox's

35

claim under O.R.C. § 4112.02(G) against Judge Grimslid in his official capacity is absolutely barred pursuant to sovereign immunity.

Notwithstanding the above, even if a plaintiff has pled a violation of federal law, whether a Court has jurisdiction to consider a plaintiff's constitutional due process and equal protection claims under *Ex parte Young* depends on whether the claim: (1) is asserted against a state official in his official capacity; (2) seeks prospective injunctive or declaratory relief and (3) concerns a continuing violation of federal law. If a plaintiff fails to meet any of these three requirements, the *Ex parte Young* exception will not apply, and the general rule— sovereign immunity—will divest the Court of jurisdiction to consider their due process claim. *Derezic,* 2014 U.S. Dist. LEXIS 118163, *11-12. Here, Knox's claims for monetary relief clearly do not satisfy the *Ex parte Young* exception and are thus barred. The Court must then look to the remaining requests for relief to determine whether they, too, are barred by the Judge's sovereign immunity.

Knox seeks injunctive relief in the form of an order requiring Judge Grimslid and the Municipal Court to accept accommodation requests via the requested means, publicly post ADA procedures, provide annual training, and designate an ADA coordinator (Am. Comp., RE 15, PageID#: 129). To the extent Knox, in essence, asked the District Court, and now this Court, to instruct Judge Grimslid to "obey the law," this is precisely the type of sovereign invasion that "conflicts directly with the

36

principles of federalism that underlie the Eleventh Amendment." *Derezic* at \*11*, citing Pennhurst*, 465 U.S., at 106; *see also*, *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) ("An injunction that does no more than order a defeated litigant to obey the law raises several concerns. One is overbreadth. An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation").

Accordingly, the *Ex parte Young* exception does not apply to Knox's claims, and the Eleventh Amendment bars the Court from considering the 42 U.S.C. § 1983 claim.

### B. Appellant conceded he is not bringing claims against Judge Grimslid in his individual capacity, rendering an analysis of judicial immunity unnecessary.

In the District Court, Knox conceded that he was not seeking damages against Judge Grimslid in his individual capacity, and thus the doctrine of judicial immunity is not applicable to this case. However, to the extent that Knox argues in his Brief that Judge Grimslid's actions were not "judicial acts," subject to judicial immunity, the law is clear that management of courtroom proceedings are judicial acts subject to immunity. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam) (holding that the plaintiff's claims against a state-court judge for alleged violations of the ADA and the Rehabilitation Act were barred by the doctrine of

37

absolute judicial immunity); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (same); *Lloyd v. Doherty*, 2018 U.S. App. LEXIS 33324, *13-14 (6th Cir. 2018) (judge and magistrate preventing plaintiff from "bringing her service dogs with her into the courtroom during the state court proceedings—were acts that these defendants took in their official judicial capacities with proper jurisdiction").

The case Knox cites to support his argument that Judge Grimslid's acts were administrative undercut his own position. In *Duvall, supra*, the judicial defendant was afforded judicial immunity as determining whether a videotext display should be used was "exercising control over the courtroom" and a judicial act. 260 F.3d. at 1133. In contrast, the court administrator, who acted as the ADA coordinator, was not entitled to quasi-judicial immunity as her function was not one normally performed by a judge. *Id*. at 1134.

Accordingly, Judge Grimslid's individual act related to the administration of the courtroom while court was in session was a judicial act, and would be subject to judicial immunity if he were sued in his individual capacity. But as Knox did not name Judge Grimslid in his individual capacity, he cannot attempt to raise such claims before this Court.

## **CONCLUSION**

For the foregoing reasons, Defendant-Appellee Judge Gregory Grimslid respectfully requests this Court affirm the District Court's Order dismissing all

claims against him, with prejudice.

Respectfully submitted,

/s/ *Cooper D. Bowen*
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP.
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Tel:   (513) 768- 5239 (Woeber)
         (513) 768- 5242 (Bowen)
Fax:   (513) 768-9244
Email: lwoeber@mojolaw.com
         cbowen@mojolaw.com

*Counsel for Defendant-Appellant Hon.*
*Gregory Grimslid*

39

## **CERTIFICATE OF COMPLIANCE**

I certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7)(B) in that it is proportionately spaced, it has a typeface of 14 points or more, and that it contains 9,494 words as counted by the Microsoft Word word-processing program on which it was generated, exclusive of the cover page, disclosures of corporate affiliation, the table of contents, table of citations, statement regarding oral argument, certificates of counsel, signature block, proof of service, designation of District Court Record, and any other item specifically excluded by these rules or local rule. I further certify this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: June 10, 2026                    */s/ Cooper D. Bowen*
                                       Cooper D. Bowen

40

## CERTIFICATE OF SERVICE

The undersigned counsel states that this brief was filed electronically; that no paper copies were filed with the clerk of court. I certify that on this 10th day of June, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users, or, if they are not, by forwarding a true and correct copy by email and/or U.S. mail, to their address of record.

*/s/ Cooper D. Bowen*
COOPER D. BOWEN

## <u>DESIGNATION OF DISTRICT COURT RECORD</u>

Defendant-Appellee Hon. Gregory Grimslid, pursuant to Sixth Circuit Local Rule 30(g), designates the following filings from the District Court's electronic records:

### *Gaines v. Cross, et al.,* Case No. 3:24-CV-187

| Record Number | Date Filed | PageID # | Title |
|---|---|---|---|
| RE 1 | 06/05/2025 | 1-21 | Complaint |
| RE 15 | 06/26/2025 | 114-131 | First Amended Complaint |
| RE 24 | 07/25/2025 | 180-20 | Defendant-Appellee's Motion to Dismiss and Memorandum in Support |
| RE 25 | 07/31/2025 | 209-237 | Plaintiff-Appellant's Opposition to Motion to Dismiss |
| RE 30 | 08/14/2025 | 291-303 | Defendant-Appellee's Reply in Support of Motion to Dismiss |
| RE 33 | 01/12/2026 | 319-328 | Opinion and Order Granting Motion to Dismiss |
| RE 35 | 02/10/2026 | 330-331 | Notice of Appeal |